THOMAS D. CARTER *v.* ROBERT F. HOKE and others.

Where a complaint sought for a rescission of a sale of land, and an injunction, &c., upon the ground that the defendants had agreed to pay CASH upon receiving the deed, and to that end gave a *sight* draft, and that it had not been paid, and the drawers were insolvent; and the answer admitted those allegations, and sought to avoid them by other matter, *Held,* that as there was an equity confessed, the injunction should be continued.

In such case if some of the defendants file *a plea,* that they purchased *for valuable consideration and without notice,* from the parties who bought from the plaintiff; upon the motion to vacate the injunction, these allegations are also to be treated as matter of *avoidance; aliter,* if the defence had been made by an *answer, full and going into particulars.*

(The reasons for this distinction stated and discussed.)

In a suit involving the title to *mining-property,* a receiver is not to be appointed unless the parties in possession are insolvent, or are injuring the property by their management.

MOTION to vacate an injunction, &c., before *Henry, J.,* at Spring Term 1869 of MADISON Court.

The action had been brought in August 1868, in order to rescind a conveyance made in May 1867, by the plaintiff to the defendants Robert F. Hoke, Thomas J. Sumner, E. Nye Hutchinson, George W. Swepson and Robert R. Swepson,

of a valuable Iron Mine in Mitchell County, known as the Cranberry Iron-ore-bed; to have the defendants Charles W. and Francis B. Russell, who had bought from Hoke and his associates, and also Samuel W. Williams and J. C. Hardin, who otherwise, and previously, had connexion with the title, declared to be trustees of said property for the plaintiff; and, in the mean time, to have a receiver appointed, &c.

The pleadings were very elaborate; especially the answer of Hoke, Sumner, and Hutchinson, which covered 98 pp. of foolscap.

All that seems necessary to state here, is, that the plaintiff charged that the defendants first named above, had contrived a scheme to defraud him of the property in dispute, of which he owned much the larger interest, and, that, after deluding him with many negotiations upon the subject, at last they agreed to pay him $44,000, *cash*, for his interest; that, upon his tendering the deed, they, after making divers excuses, offered him a *sight draft* upon a bank in New York, which they represented to be upon funds deposited by them there, and that he, with some reluctance, received it; that, upon presentation, it was protested, and has never been paid; that the drawers are insolvent; and have since sold the land to the defendants, the Russells, &c.

The defendants Hoke, Sumner and Hutchinson, by joint answer, gave a detailed account of their connexion with the transaction, and alleged, that it was owing to certain ill faith and misconduct of the plaintiff, which they set forth, that the draft was not paid; that, although given *at sight*, it was abundantly understood by the parties that the funds to meet it were to be obtained within a few days of the time when it was given, by a resale then pending,—which resale was afterwards defeated by the plaintiff, that subsequently they had sold to the Russells, &c.

The Russells, "answering", stated, briefly, that they were purchasers without notice, at the price of $50.000, which

they had paid at the time of taking the deed, March 30th 1868.

It seems unnecessary to refer to the other answers.

Upon the coming in of the answers, a motion was made to vacate the order for a receiver, and also the injunction.

His Honor allowed the motion, and the plaintiff appealed.

*Graham*, for the appellants.

1. The matter stated by the defendants Hoke, &c., as to why payment of the draft was not made is *in avoidance*, and cannot be considered upon a motion to vacate. Adams Eq. 195, 198; *Allen* v. *Pearce*, 6 Jon. Eq. 309; *High Shoals Co.* v. *Grier*, 4 ib., 132; *Ashe* v. *Johnston*, 2 ib. 149.

2. Averment by a *purchaser* that he is such *for value and without notice,* is necessary, and also is *in evidence*. Story, Eq. Pl. §§, 662, 806; Adams Eq. 325, 5.

*Phillips & Merrimon, contra.*

1. The application for a restraint upon the Russells is not of the ordinary sort. *Deep River Co.* v. *Fox*, 4 Ire. Eq. 61.

2. The complaint is to be taken as averring that the Russells bought *with* notice, and therefore the answer here is *responsive,* and not *in avoidance. McNeill* v. *Magee*, 5 Mason, 269; Story Eq. Pl., §§ 263, 264, 603, 604; *Howlett* v. *Thompson*, 1 Ire. Eq. 369; *King* v. *Trice*, 3 ib. 568; *Campbell* v. *Black*, 6 ib. 321; *Woodfin* v. *Johnson*, 1 Jon. Eq. 317; *Taylor* v. *Kelley*, 3 ib. 240.


PEARSON, C. J. In respect to the defendants Hoke, Sumner and Hutchinson :

The answers are full and responsive to the allegations of the bill; (although not to be drawn into precedent, because prolix and argumentative) and the injunction can only be sustained by "equity confessed."

These defendants admit that the sale by Carter to them was *a cash sale,* that Carter accepted the "sight draft" as

*money,* and delivered the deed, upon their assurance that the draft would be paid on presentation; and that the money was not paid. Here is "an equity confessed," unless it can be avoided on the hearing, to-wit; Carter, trusting to their assurance that the money would be paid on the presentation of a sight draft, instead of retaining the title as a security for the payment of the purchase money, *takes their bond* for it, and executes the deed. When their bond was not made good, as little as in conscience they could have done, nothing else appearing, was to tender him back the deed, and take a bond for title when the purchase money was paid, or else to give him a mortgage on the land to secure the purchase money. There is a further "equity confessed," to-wit; the defendants without paying for the land, or securing payment of the purchase money in any way, actually transfer the land to the defendants, the two Russells; make no provision whatever for the payment of the purchase money, and do not pretend that they are able, or have any intention to pay it: on the contrary, they confess they are not able to pay the purchase money and do not intend to do it, if they can avoid doing so.

We think, there is equity confessed; and refrain from entering further into the subject lest it might prejudice the grounds set up in the answer by way of avoidance.

2. As to the defendants, the two Russells: They file what is called an answer, but what is in fact *a plea,* in which without responding to any of the allegations of the bill, they rely on the ground that they are "purchasers for valuable consideration and without notice."

A plea in equity is a special answer to avoid a general answer, under the rule that if one answers at all, he must answer fully; and the plea is only allowed when it puts the matter upon some *one point* which is decisive of the controversy, as, a "release," or a *purchase for valuable consideration without notice.* Mitford's Plead. 276.

Passing over the alleged irregularity in regard to the au-

thentication of this answer: it does not profess to respond to the allegations of the bill; and the parties put themselves on the ground of being "purchasers for valuable consideration without notice," and, of course, not subject to the plaintiff's equity.

In this stage of the proceeding, how is the Court to know that they have paid a valuable consideration? Admitting that proof of this fact, will put on the plaintiff the proving of notice, still, here is new matter relied on by way of avoiding the plaintiff's equity, and until the plea is disposed of, these defendants are not in a position to sustain a motion to dissolve the injunction.

A plaintiff may not know whether a party to whom the property is transferred, has paid a valuable consideration, or not, or whether he bought with or without notice. Hence, it is not necessary in the *stating part of the bill,* to set out either that the property had been transferred without a valuable consideration, or that he had notice. It is sufficient to state that one who held the legal title subject to the plaintiff's equity, has transferred it to another party, to evade this equity, as is done by this bill. The party may then, either by plea or answer, set up the defence, that he is a purchaser for valuable consideration and without notice : but if he answers, he must do so fully, and go into particulars, in order to entitle him to ask for a dissolution of the injunction.

The rule, that, where a defendant relies on the defence of "purchaser for valuable consideration without notice," on proof that he paid a valuable consideration, the burden of disproving the negative part of the defence is put on the plaintiff, has an analogy in proceedings at law.

The declaration in an action against an administrator does not allege in so many words, that the defendant has assets, still, upon the negative plea, "no assets," the burden of proving assets, is on the plaintiff, because in the declaration there is by implication an allegation of assets ; for otherwise the defendant does not unjustly *detain,* and refuse to pay the debt of his intestate.

CARTER *v.* HOKE *et al.*

The plaintiff may, if so advised, set out in the *charging part of the bill* his information as to particular facts, tending to show that no consideration was in fact paid, or, that the party had actual or constructive notice. This will impose on the party the necessity of filing an answer, in support of the plea, for which reason it is called "an anomalous plea." This however is done only for the purpose of attaining a discovery on oath, and is by no means necessary in stating the plaintiff's grounds of equity. If particular instances of notice or circumstances of fraud are *charged,* they must be denied as specially and particularly as charged in the bill. This special particular denial of notice or fraud must be by way of answer in support of the plea. Mitford, 276.

In our case, the bill does not charge, by *way of anticipating the defence,* that the defendants had notice; so, what is called an answer, is in the most approved form of a plea, "purchaser for valuable consideration and without notice," except that it does not aver *positively* that the *vendors* were in possession, at the date of the execution of the deed; and an answer was not required to support this as a *plea.*

But looking on it, as an *answer,* it is not responsive, and is not so full and satisfactory as it should be, if intended as the foundation of a motion to dissolve the injunction.

It is not probable that these defendants paid $50,000 cash, without inquiring as to the title, and as to all of its "environments." This required no explanation in a plea, but in an answer the party professes to set out all that he knows, or believes from information, relevant to the subject of controversy, and the Court cannot fail to notice that in the answers of their co-defendants Hoke, Sumner and Hutchison it is averred, that these two defendants, *at the first,* advanced $30,000 for an interest in one-fourth of the property, to be expended in its development, and afterwards, at how long an interval is *not* stated, paid $50,000 cash for the fee simple estate in the whole; so, these gentlemen had greater means of information than is disclosed by their answer.

23

Is a court expected to be able to believe that, in this interval, these gentlemen had not heard of the loud clamor of the plaintiff, that he had parted with a legal title on a *cash sale*, at the price of $44,000, and had never received one cent of the purchase money!

These objections to the answer, and the consideration that the allegation of being purchasers for valuable consideration without notice, is matter of avoidance, in our opinion fully meet the motion to dissolve the injunction.

But we are of opinion, that the order for a receiver, by which, of course, the mining operations must be stopped, for the receiver had no funds to meet the necessary outlays, was improvidently granted, for there is no allegation that the defendants, Charles W. Russell and Francis B. Russell, are insolvent, or not amply able to account for the mesne profits, in the event that the land is held liable for the plaintiff's claim; or that the property is being injured by their management; on the contrary, it is better for all sides to keep the works in operation.

3. In respect to the defendants, Harden, Williams and the two Swepsons, it appears, by the answer, that they are not affected by the injunction. But they are necessary parties, because their rights may be involved in the final adjustment of the whole matter. So they must be content to abide the course of the suit, and have no right to interfere upon the question of injunction, and the appointment of a receiver.

There is error in the decretal order.

It will be modified so as to continue the injunction against any disposition or transfer of the land, until the final hearing, leaving the order to stand so far as it discharges the receiver, and allows the defendants, Charles W. and Francis B. Russell, to resume the operation of the works.

The costs in this court will be paid by the defendants, Hoke, Sumner and Hutchison.

This will be certified.

PER CURIAM.                              Ordered accordingly.