W. J. BLACKWELL v. HOWARD RAY LEE and BOBBY GLOVER
AND
WARREN G TART v. HOWARD RAY LEE AND BOBBY GLOVER.

(Filed 21 May, 1958.)

1. **Automobiles § 37: Evidence § 46—**
   Testimony that there were no obstructions on the highway at the scene of the accident except a sign post at the south shoulder is competent when it refers solely to the presence or absence of any physical object or condition that might have a tendency to obstruct the driver's view, and is, therefore, a statement of fact by the witness. Principles of law relating to the competency of opinion evidence as whether an identified object was sufficient to obstruct the driver's view are inapposite.

2. **Automobiles § 40: Evidence § 42c—**
   Testimony of a statement made by one plaintiff tending to substantiate one defendant's version of the accident is competent as substantive evidence in favor of such defendant, but is properly excluded as to the other plaintiff and the other defendant.

3. **Evidence § 17—**
   On cross-examination of plaintiffs' witness, he testified as to a statement made by one plaintiff, and on redirect examination plaintiffs' counsel were permitted to ask leading questions for the purpose of eliciting testimony that the witness had told plaintiffs' counsel a somewhat different version of the admission. *Held:* It was within the discretion of the trial court to permit the leading questions on redirect examination of their adverse witness for the purpose of refreshing the recollection of the witness without offending the rule that a party may not impeach his own witness, and further in the instant case the witness's response to the leading questions did not impair his prior testimony on that particular subject.

**4. Evidence §§ 22, 30a—**

    The use of photographs in cross-examining a witness in regard to his testimony as to the width of the shoulders of the road *held* not objectionable as in effect admitting the photographs as substantive evidence, and under the circumstances of this case was not prejudicial.

**5. Automobiles § 15—**

    An instruction on the right of a motorist to assume that an approaching vehicle would yield one-half the highway in passing *held* not objectionable in limiting such right to a motorist himself observing the requirements of the statute, when such instruction, considered in context, is to the effect that a motorist is not entitled to rely on such assumption if such motorist was himself then driving on his left side of the highway and was thereby contributing to the hazard and emergency that existed immediately prior to the collision. G.S. 20-148.

APPEAL by defendant Lee from *Fountain, Special Judge,* September Civil Term, 1957, of HARNETT.

Two civil actions, consolidated (by consent) for trial, growing out of a head-on collision that occurred October 30, 1956, about 7:15 a. m. on the Bunnlevel-Erwin Highway, between a 1953 Mercury, owned and operated by defendant Lee, and a 1950 Mercury, owned and operated by defendant Glover.

Plaintiffs, passengers in Lee's car, instituted separate actions to recover damages for personal injuries, alleging that the collision and their injuries were caused by the joint and concurrent negligence of Lee and Glover.

In each complaint, the allegations relating to negligence are identical. Each plaintiff alleged, *inter alia,* that each defendant "did operate his . . . automobile to the left of the center lane *(sic)* of said highway and in fact was operating said . . . automobile on the wrong side of said highway."

The evidence, to the extent necessary to understand the legal questions presented, is set forth in the opinion.

In each case, three issues, (1) as to the alleged negligence of Lee, (2) as to the alleged negligence of Glover, and (3) as to damages, were submitted. All negligence issues were answered in favor of plaintiffs. The jury awarded damages of $6,000.00 in the *Blackwell* case and of $25,000.00 in the *Tart* case.

Judgments against defendants, jointly and severally, were entered. These judgments were based on the verdicts and were in accordance therewith with this exception: In the *Tart* case, "by and with the consent of counsel for the plaintiff in open court given, the court in its discretion reduced the amount of recovery to $15,000.00."

Defendants excepted and appealed. Later, Glover abandoned his

appeal. Lee, now sole appellant, assigns error in respect of (1) rulings on evidence, and (2) the court's instructions to the jury.

*Doffermyre & Stewart for plaintiffs, appellees.*
*Dupree & Weaver and Walter Lee Horton, Jr., for defendant Lee, appellant.*

BOBBITT, J. The Bunnlevel-Erwin Highway runs east-west. Lee was going west towards Bunnlevel. Glover was going east towards Erwin.

There was evidence tending to show these physical facts: The paved portion of said highway was 21 feet wide. The center was marked by a broken white line. There was a shoulder of approximately 11½ feet on each side of the paved portion. The collision occurred "about the center line," approximately opposite a sign post located on the south shoulder some 6 to 8 feet from the south edge of the pavement. It was raining. The road was wet and slick. Approximately 100 yards east of the sign post, the highway curved; and this curve, when proceeding west, was to the driver's left. Approximately 200 yards west of the sign post, the highway curved; and this curve, when proceeding east, was to the driver's left. Between these two curves there was a straight-away of approximately 300 yards. A driver, coming out of either curve, could see straight down the road for this distance. After the collision, the front of each car was on the south side of the paved portion of the highway, the Glover car headed southeast and the Lee car headed southwest.

Only two witnesses testified as to what occurred on the occasion of the collision, namely, defendant Glover, called by plaintiffs as an adverse witness, and defendant Lee. Plaintiff Blackwell did not testify. Plaintiff Tart's testimony related wholly to injuries and damages, he having been asleep when the collision occurred.

Glover testified, in substance, as follows: His car, traveling east, was wholly in his right (south) lane at all times until, immediately before the impact, he applied his brakes; and this caused a portion of his car to skid into the north lane. He was approximately 50 yards from the sign post when he observed the Lee car coming around the curve in its left (south) lane. Thereafter, the Lee car "veered" to its right (north) lane and then cut back to its left and into the south lane immediately before the collision.

Lee testified, in substance, as follows: His car, traveling west, was wholly in his right (north) lane of the highway until he reached the scene of collision. The Glover car "was coming out of this other (west) curve," in its left (north) lane, when he first saw it. He (Lee) was

then in the straightaway. The Glover car was on Lee's right (north) side of the highway. Immediately, he took his foot off the gas to give the operator of the Glover car time to cross back to his (right) side of the highway. "It did not cross back but continued on my side of the road going further over to the north side." When the cars were 150-200 feet apart, Lee sounded his horn and applied his brakes; but Glover continued to approach in the north lane. When the cars were some 15 feet apart, Lee "put on full brakes and veered to the left to try to get out of his way to the south side of the road." At the same time, Glover "put on brakes and veered hard to the south"—towards Glover's right side of the highway. Lee testified: ". . . at the point of impact I was across the center line. I intentionally operated my automobile to the left of the center line." Lee cut to his left because "to cut to the right (he) would have been almost certain that (he) would have a ditch job and possibly a collision so (he) took to the left. (He) veered to the left sharply, turned to the left so as to get (him) by this oncoming (Glover) car. At the time (he) cut to (his) left the other car had not started to get back on its right."

Glover estimated Lee's speed at 60 to 70 miles per hour, his own at 30-35 miles per hour. Lee estimated Glover's speed at 50-55 miles per hour, his own at 40-45 miles per hour. Lee testified that he had slowed down to approximately 20-25 miles per hour "at the time the cars came together."

We consider *seriatim* the assignments of error *brought forward* by appellant in his brief.

Assignments of error 3, 7 and 11, based on Exceptions 3, 7 and 12, relate to testimony, admitted over objection, to the effect that there were *no obstructions* on the highway or on either shoulder except the sign post on the south shoulder. Appellant contends that this testimony, referred to as the opinion or conclusion of the witness, was incompetent as an invasion of the province of the jury, citing, *inter alia,* *Bevan v. Carter*, 210 N.C. 291, 186 S.E. 321, and *Wood v. Insurance Co.*, 243 N.C. 158, 90 S.E. 2d 310. In addition, appellant cites cases to the effect that the opinion rule does not preclude "a shorthand statement of the facts," and then argues that the challenged testimony does not fall within this excepion to the general rule.

The cases cited are readily distinguishable when the evidence now challenged is considered in the context of the entire factual situation. All the evidence discloses that the Glover and Lee cars constituted the only traffic on the straightaway prior to and at the time of the collision. It was not a situation where, for example, there was evidence relating to a sign, a barricade, a tree, or other physical object, and the testimony was directed to whether the described object was or was not sufficient to obstruct the driver's view or travel. The gist of

the testimony here challenged is simply that *no physical object* was involved. The word "obstruction," in the context used, simply referred to the presence or absence of any physical object or condition that might have a tendency to obstruct, not to whether *an identified* object or condition was sufficient to obstruct the driver's view or travel. Moreover, there is no evidence that any object or physical condition having a tendency to obstruct the driver's view or travel was involved. Hence, these assignments of error lack merit and are overruled.

Assignments of error 4, 5 and 6, based on exceptions of like number, relate to testimony of Grady, admitted, over appellant's objection, on *redirect* examination by plaintiffs' counsel.

Grady, the investigating State Highway Patrolman, was offered as a witness by plaintiffs. When cross-examined by appellant's counsel, he testified that he had heard (plaintiff) Blackwell make a statement to the effect that the Lee car was on its right side of the road, traveling approximately 45 miles per hour, then slowing down to 25 or 30 miles per hour; and that Lee, after blowing his horn, "slowed down and cut to his left to avoid a head-on collision with the Glover car." There was no contention that Blackwell's declarations were a part of the *res gestae*.

This testimony was properly admitted against plaintiff Blackwell and in favor of defendant Lee as substantive evidence, the admission of a party. *Hobbs v. Coach Co.*, 225 N.C. 323, 34 S.E. 2d 211; *Salmon v. Pearce*, 223 N.C. 587, 27 S.E. 2d 647; Stansbury, North Carolina Evidence, Sec. 167. The court correctly instructed the jury that this testimony was not to be considered against plaintiff Tart or against defendant Glover.

The court, in its discretion, permitted plaintiff's counsel, on redirect examination of Grady, to refer to a conversation between plaintiffs' counsel and Grady the previous night and to ask leading questions for the purpose of eliciting testimony to the effect that Blackwell's declarations, as related by Grady to plaintiffs' counsel, were somewhat different, less damaging to Blackwell, than Blackwell's declarations as related by Grady in his testimony.

Careful consideration of Grady's answers to these leading questions leaves the impression that plaintiffs' counsel failed to achieve the desired result; for we find nothing in Grady's answers that appreciably impairs the testimony Grady had previously given when cross-examined by appellant's counsel.

The following excerpt from the opinion by Ervin, J., in *S. v. Tilley*, 239 N.C. 245, 79 S.E. 2d 473, sums up the legal principles applicable here: "The trial judge has the discretionary power to permit a party to cross-examine his own witness for a legitimate purpose. (Citations) Accordingly, the trial judge may let a party cross-examine his own

witness, who is hostile or who surprises him by his testimony, for the purpose of refreshing the recollection of the witness and enabling him to testify correctly. (Citations) In so doing, the trial judge may permit the party to call the attention of the witness directly to statements made by the witness on other occasions. (Citations) But the trial judge offends the rule that a witness may not be impeached by the party calling him and so commits error if he allows a party to cross-examine his own witness solely for the purpose of proving him to be unworthy of belief. (Citations)"

It is quite clear that plaintiffs' counsel, by the leading questions now considered, was not attacking the general character of Grady solely for the purpose of proving him to be unworthy of belief. Rather, it would seem that he was undertaking to refresh his recollection by inquiry as to prior statements made by Grady on the particular subject of Blackwell's declarations. Indeed, plaintiffs relied in substantial measure on Grady's testimony in respect of other phases of the case.

Aside from the fact that Grady's answers in response to these leading questions did not impair his prior testimony on the particular subject of Blackwell's declarations, we think it was permissible for the court, in its discretion, to permit the leading questions and the answers elicited thereby.

Assignments of error 12, 13 and 14, based on Exceptions 13, 14 and 15, relate to the use of a photograph or photographs by plaintiffs' counsel when cross-examining appellant.

On cross-examination, appellant testified that he "would say the shoulders are about five or six feet in width." This was in conflict with Grady's testimony that each shoulder was 11½ feet in width. Later, also on cross-examination, appellant testified: "I don't know if it is at least 11½ feet from here to that little ditch. Eleven feet is a pretty good distance. I didn't measure it, but I don't think that it was 11 feet, but I didn't measure it. I would think it was a smaller distance than ten feet. I would not say that the whole road, including the two shoulders, was not 43 feet wide."

Preceding the questions and answers to which these assignments relate, appellant had testified that he had enough shoulder so that two cars could pass and be clear of each other on this highway, "if the shoulder had been flat." The challenged questions and answers concerned further inquiry as to whether the north shoulder was "flat across like the surface of the highway." "Q. Do you see anything that is a hollow or rough on that shoulder? Come out here and show it to the jury." Objection by appellant; overruled; Exception No. 13. (No answer) "Q. Point out on that photograph what kept you from that. Let

the jury see it, please sir." Objection by appellant; overruled; Exception No. 14. "A. There is nothing on that shoulder or roadbed." Later, in further cross-examination: "Q. What does that photograph show; does that indicate a ditch which you referred to?" Objection by appellant; overruled; Exception No. 15. "A. Yes sir, that indicates the ditch."

The record on appeal contains no photographs. Moreover, the record does not show that the photograph to which plaintiffs' counsel referred was identified, offered in evidence or exhibited to the jury.

Appellant's contention is that the cross-examiner's use of a photograph "to contradict or impeach the spoken testimony of a witness" is in effect the use thereof as substantive evidence. The flaw in appellant's contention is that, except for the implication arising from appellant's prior answer, "if the shoulder had been flat," there is nothing in appellant's testimony, or in the testimony of any other witness, to the effect that the north shoulder was otherwise than flat from the pavement to the ditch that constituted the north edge thereof. Appellant testified: "I say that I would have run into a ditch on the right even though the shoulder was 11 feet wide and level." Under these circumstances, error, if any, in the cross-examiner's use of the photograph(s) may not be considered prejudicial.

Assignments of error 28 and 29, based on Exceptions 29 and 30, relate to the following excerpts from the charge:

"Now, if the defendant Lee was observing *the rule of the road* and if he acted upon the assumption that Glover would yield to him one-half of the main-traveled portion of the roadway and if relying upon that assumption and in the absence of notice to the contrary, he proceeded as he did, and if after notice to the contrary, that is, if the conduct and driving of the defendant Glover was such as to put him on notice, that is, to put Lee on notice that Glover would not yield, or was not likely to yield Lee's side of the road to Lee, then Lee was charged only with the duty, but with that duty, of doing what a person of ordinary prudence when similarly situated, charged with a like duty, would have done. And if under those circumstances it reasonably appeared to a person of ordinary prudence that the safest thing to do was to turn left, then that act of turning left would not constitute negligence on his part." (Our italics) Exception 29.

"On the other hand, if the defendant Lee was not himself observing *the requirements of the statute, and if he himself was partly at fault,* then, of course, he was not entitled to rely on any such assumption; and furthermore if he, that is the defendant Lee, was driving to the left side of the road and then drove back to his right and then cut across in front of Glover while Glover's conduct was such as not

to give notice to Lee that Glover would not yield to Lee his half of the road, then, of course, under those circumstances the defendant Lee would not have been justified or permitted *by the terms of the statute* to turn to the left of the road." (Our italics) Exception 30.

Appellant contends that this portion of the second instruction, "If the defendant Lee was not himself observing the requirements of the statute, and if he himself was partly at fault," erroneously deprived him of his legal right to assume, unless and until he had notice to the contrary, that Glover would yield to him his one-half of the main-traveled portion of the highway.

In support of this contention, appellant relies on *Cox v. Freight Lines,* 236 N.C. 72, 72 S.E. 2d 25, wherein this Court disapproved the unqualified statements in the opinions in *Groome v. Davis,* 215 N.C. 510, 2 S.E. 2d 771, and *Swinson v. Nance,* 219 N.C. 772, 15 S.E. 2d 284, to the effect "that the right to rely on a right of way created by positive legislation and to assume that other users of the highway will obey the law and exercise ordinary care is restricted to those motorists who are themselves absolutely free from negligence."

The three cited cases involved intersection collisions. In the *Groome* and *Swinson* cases, this Court had held that a motorist on a dominant highway by traveling at an unlawful speed forfeited his right to assume that a motorist on the servient highway would stop in obedience to the stop sign. In the *Cox* case, where an automatic signal device at a street intersection was involved, this Court held that, if defendant approached and entered the intersection on the green light, the fact that he was traveling at unlawful speed did not, as a matter of law, work a forfeiture of his right to assume that the motorist on the intersecting street would stop in obedience to the red light, but that defendant's negligence was to be determined on the basis of whether he exercised due care under all the circumstances. To hold otherwise, as expressed by Ervin, J., would require "that a motorist be penalized for his negligence, even though it bears no causal relation whatever to the occurrence under judicial investigation," and "that the negligence of a motorist, however inconsequential it may be, can nullify positive legislation aptly designed to protect human life and limb at highway intersections." Nothing stated herein should be construed as impairing or modifying the principles of law declared in the *Cox* case.

Preceding the quoted instructions, the court read G.S. 20-148, which provides: "Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the main-traveled portion of the roadway as nearly as possible." Then the court discussed *this statutory rule,* explaining in considerable detail the circumstances under which a driver who was himself observ-

ing *the rule* had the right to assume and act upon the assumption that the driver of the other vehicle would also observe *the rule* and turn to his right, if necessary, so that the two vehicles could pass each other in safety in the manner prescribed by statute. To these instructions appellant did not except. Then followed the quoted instructions.

The true meaning of the instruction, "if the defendant Lee was not himself observing the requirements of the statute, and if he himself was partly at fault," must be considered as relating solely to the particular rule that was then the subject of the court's instructions. The gist of the instruction, in the context of the charge and of the evidential facts, is that plaintiff was not entitled to rely on the assumption that Glover would turn to the right and get on his one-half of the main-traveled portion of the highway if at that time appellant was driving on his left side of the highway and thereby contributed to the hazard and emergency that existed immediately prior to the collision. When so understood, there was no error in the instruction; for if appellant was negligent *in this respect*, such negligence did bear a causal relation to the collision.

The court's instructions, as related to the particular statutory rule under consideration, are supported by decisions dealing with analogous factual situations. *Lucas v. White*, 248 N.C. 38, 102 S.E. 2d 387, and cases cited. Indeed, the court's instructions are substantially in accord with the rule as stated by Winborne, J. (now C.J.), in *Hoke v. Greyhound Corp.*, 227 N.C. 412, 42 S.E. 2d 593.

Assignments of error 15, 26, 27, 28, 29 and 30, based on Exceptions 16, 27, 28, 29, 30 and 31, may be disposed of without elaboration.

These assignments are listed in appellant's brief under the caption, "The Court erred in failing to charge the jury on essential features of the evidence and the applicable law." While appellant does not cite authority or focus attention on any specific assignment, his argument is generally to the effect that the court failed to explain and apply satisfactorily the provisions of G.S. 20-148. An examination of the charge does not disclose error in this respect. Moreover, appellant has failed to show prejudicial error in respect of any matter involved in this list of assignments.

No error.