STATE OF NORTH CAROLINA v. ROBIE C. ALLEN

No. 695SC267

(Filed 28 May 1969)

**1. Criminal Law §§ 150, 154;   Constitutional Law § 30—   defendant's right of appeal — lack of stenographic trial record**

That defendant was not furnished a stenographic transcript of his trial in that the court reporter died without having transcribed his shorthand notes of the trial and no one was found who was capable of transcribing the notes *is held* not to deny defendant an adequate and effective review on appeal, where (1) defendant's counsel was able to prepare without unusual difficulty a statement of the evidence and the proceedings at the trial "from the best available sources, including his recollection," as provided by Court of Appeals Rule 19(f), (2) defendant presented no reason that the unavailability of a stenographic transcription of the reporter's notes deprived him of an opportunity of adequate appellate review, (3) the testimony of the witnesses was brief and related to a simple factual situation, (4) *defendant did not contend that any error actually occurred at his trial*, and (5) the evidence of defendant's guilt was overwhelming and uncontradicted.

**2. Criminal Law § 154—   case on appeal — reporter's stenographic notes — Rule 19(f)**

Where court reporter died before transcribing his notes of defendant's trial and no one was found who was capable of transcribing these notes, Rule of Practice in the Court of Appeals No. 19(f) authorized the appellant to prepare and serve on the solicitor "a statement of the evidence and proceedings from the best available source, including his recollection," and in so doing, no constitutional or other substantial right of appellant was infringed.

**3. Criminal Law § 150—   right of defendant to appeal — transcript — indigency**

The State may not deny defendant in a criminal proceeding in its courts adequate appellate review of his trial solely because of his inability to pay for a transcript.

APPEAL by defendant from *Bundy, J.*, 12 December 1968 Session of NEW HANOVER Superior Court.

The defendant, Robie C. Allen, was tried on his plea of not guilty to an indictment, proper in form, charging him with felonious breaking and entering, larceny, and receiving. The charges against defendant Allen were consolidated for purposes of trial with identical charges, which arose out of the same events, against one William Franklin Tyler.

At the trial the State presented the testimony of two police officers of the Wilmington Police Department who testified that at

about 10:45 p.m. on 19 October 1968 the police received a call to go to the Southside Lunch, at the corner of Front and Castle Streets; upon arrival, they noticed the top part of a padlock on the ground outside the front door; the door was closed but was not locked; the police entered the premises with drawn revolvers; on entering they noticed a cardboard box on the counter containing cigarettes and other items; on looking around with their flashlights they found defendant Robie C. Allen, and William Franklin Tyler, crouched down behind the ice cream freezer; the police ordered the two men to get up with their hands in the air; Tyler had a crowbar in his hands and a pair of gloves; as defendant Allen got up off the floor, the police observed the bottom part of the padlock lying under where he had been crouched; the police told defendants Allen and Tyler they were under arrest for breaking and entering; on searching defendant Allen, the police found a rubber hammer under his shirt.

The State also offered the testimony of the owner of the Southside Lunch who testified that she had closed her place of business and padlocked the front door around 6:30 p.m.; at about 12:00 midnight she was informed by the police that they had apprehended two persons inside her cafe; she immediately dressed and went to the cafe and upon arrival observed the two defendants in custody of the police officers; she did not know either of the defendants but identified defendant Allen as having eaten lunch in the place that same afternoon; she identified the lock, which was found broken on the ground, as being the lock with which she had padlocked the door previously that evening; she identified cigarettes and other items that were found in a box on the counter as being her property and that she did not box this merchandise herself.

Neither defendant took the stand or offered any evidence. The court allowed defendants' motion for nonsuit as to the counts in the bill of indictment charging larceny and receiving, and submitted the case to the jury solely on the count of felonious breaking and entering. The jury returned a verdict of guilty as charged of felonious breaking and entering. From judgment sentencing defendant Allen to prison for a term of ten years, defendant appealed.

*Attorney General Robert Morgan, Deputy Attorney General Ralph Moody, and Staff Attorney Carlos W. Murray, Jr., for the State.*

*Yow & Yow, by Lionel P. Yow, for defendant appellant.*

PARKER, J.

[1]   Appellant's sole assignment of error is that the trial court erred "in that it is unable to furnish the defendant with a transcript of his trial so that he may be able to effectively perfect his appeal." Following the trial the judge of superior court, upon finding defendant to be indigent, appointed the same attorney who had represented him at his trial to represent defendant in connection with this appeal. At the same time the court ordered the court reporter to furnish defendant's counsel with a transcript of the trial to be paid for at public expense. These orders were entered 20 December 1968. On 27 December 1968 the court reporter was killed without having transcribed his shorthand notes of the trial. Subsequently the clerk of superior court advised appellant's counsel that no one had been found who was able to transcribe from the court reporter's shorthand notes. Appellant contends that because he has not been furnished with a transcription of the stenographic notes of his trial he has thereby been deprived of due process in that he has been denied an adequate and effective review on appeal. We do not agree.

The record and statement of case on appeal as docketed in this Court and as agreed to by stipulation signed by the solicitor and by the attorney for appellant, contains the following: "The following is a statement of the evidence and proceedings that were obtained from the best available sources in view of the fact that the stenographic record that was made could not be read." There then follows a narrative statement, in considerable detail, of the testimony as given by the State's witnesses, of the motions made by attorneys for the defendant, and the court's rulings thereon, and a statement of the substance of the court's charge to the jury.

The record on appeal also contains the following:

"At the regular and open session of court, the defendant named above appeared in person, was confronted by his accusers and was given a full opportunity to cross-examine all of the State's witnesses, to testify, to procure and present the testimony of his own witnesses, to present other competent evidence, and to speak and argue in his own behalf, in person and by attorneys."

Rule 19(f) of the Rules of Practice of this Court provides:

"In the event no stenographic record of the evidence or proceedings at a hearing or trial was made, the appellant shall, within ten days of the filing of the notice of appeal, prepare and serve on the respondent a statement of the evidence and proceedings *from the best available sources, including his rec-*

*ollection,* for use instead of a stenographic transcript. The respondent may serve objections or propose amendments thereto within ten days after service upon him. Thereupon the statement with the objections or proposed amendments, shall be submitted within ten days by the appellant to the trial tribunal for settlement and as settled and approved shall be included in the record on appeal. The trial tribunal shall settle the statement within ten days after its submission." (Emphasis added.)

[2]     While in the present case a stenographic record in the form of shorthand notes was made at the trial, because of the death of the court reporter before transcribing his notes and because no one was found who was capable of transcribing these notes, in effect no stenographic record in intelligible form of the evidence or proceedings at the trial of this case was prepared. Therefore the provisions of Rule 19(f) apply, and the counsel for appellant and the solicitor properly followed its provisions in preparing the record on appeal. In so doing, no constitutional or other substantial right of appellant has been infringed.

In *Rogers v. Asheville,* 182 N.C. 596, 109 S.E. 865, our Supreme Court denied a petition for certiorari which had been sought on the ground that the stenographer at the trial, because of her other duties as court reporter, had not been able to transcribe her notes in time to permit timely preparation of the case on appeal. Clark, C.J., speaking for the Court, said:

"But, however that might be, the stenographer's notes are not the compelling and supreme authority as to what transpired during the trial. The judge in charging the jury, always tells them that their recollection, and not that of the court itself, must govern them as to what was the testimony of the witnesses. And in settling the cases on appeal the first authority is that of counsel themselves in agreeing as to what occurred at the trial as to the evidence, as to the charge, and otherwise, and when they do not agree the judge must settle what really occurred.

"Efforts have been made heretofore to make the stenographer's notes of higher authority than the agreement of counsel, or even the statement of facts as settled by the judge. But on the very first occasion when this view was advanced the Court held, in *Cressler v. Asheville,* 138 N.C. 485, that when the parties cannot agree the judge must settle it, saying: 'The stenographic notes will be of great weight with the judge, but are not conclusive, if he has reason to believe there was error or mistake. The stenographer cannot take the place of the judge

who is alone authorized and empowered by the Constitution to try the cause, and who alone '(if counsel disagree) can settle for this Court what occurred during the trial. . . . Of course, if such notes were conclusive as to the evidence, they should be equally so as to what exceptions were taken and rulings made, and all other matters occurring in the progress of the trial. This would simply depose the judge and place the stenographer in his place for all purposes of an appeal. All the care taken to secure men of high integrity and impartiality to discharge the functions of the important office of judge of the Superior Court . . . becomes of secondary importance if a stenographer appointed by the clerk of the court, and not the judge elected by the people of the State, is to decide what were the exceptions, rulings, evidence, and other incidents of a trial. Now, as always, these matters must be settled by the judge when counsel disagree. The stenographer's notes will be of valuable aid to refresh his memory, but the stenographer does not displace the judge in any of his functions.'

\*     \*     \*

"We must repeat again that stenographers are a helpful aid, but are not indispensable. They have not been indispensable heretofore, and are not absolutely indispensable now."

**[3]**     It is, of course, clear that a State may not deny a defendant in a criminal proceeding in its courts adequate appellate review of his trial solely because of his inability to pay for a transcript. *Griffin v. Illinois,* 351 U.S. 12, 76 S. Ct. 585, 100 L. ed. 891. In *Griffin,* however, counsel for the State had conceded that petitioners needed a transcript in order to get adequate review of their trial. Furthermore, the court in that case made clear that a stenographic transcript might not be required in every case when it stated:

"We do not hold, however, that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The (Illinois) Supreme Court may find other means of affording adequate and effective appellate review to indigent defendants. For example, it may be that bystanders' bills of exceptions or other methods of reporting trial proceedings could be used in some cases."

**[1]**     We recognize that there may be cases of such length or complexity that an adequate record on appeal cannot be prepared without a stenographic transcript. See, Annot., 19 A.L.R. 2d, 1098. Such was not true in the present case. Here, only three witnesses were presented. Their testimony was brief and related to a simple factual

situation. Appellant's counsel does not contend that any unusual difficulty was encountered in following the provisions of Rule 19(f) when he prepared the statement of the evidence and the proceedings at defendant's trial "from the best available sources, including his recollection." He cites no fact and advances no reason to bolster his unsupported assertion that the mere fact that he did not have available a stenographic transcription of the court reporter's notes deprived him of an opportunity to obtain adequate and effective appellate review. He does not contend that any error actually occurred at his trial. Examination of the narrative statement of the testimony in the record before us, agreed to as accurate by the appellant, reveals that there was overwhelming and uncontradicted evidence of defendant's guilt of the crime for which he was convicted. The judgment appealed from was supported by the verdict.

In the entire trial we find

No error.

MALLARD, C.J., and BRITT, J., concur.