STATE OF NORTH CAROLINA v. THOMAS WILLIAM RICH

No. 713SC632

(Filed 15 December 1971)

1. Constitutional Law § 31— daily transcript during the trial

An indigent defendant in a homicide case was not entitled to a daily transcript of the testimony during the trial.

2. Criminal Law § 43— defendant's use of photographs during cross-examination

Refusal of the trial court to allow defendant the use of photographs during his cross-examination of the State's witnesses was without error, especially since the photographs had never been introduced into evidence.

3. Homicide § 26— additional instruction on second-degree murder — omission of words "deadly weapon"

Additional instruction of the trial court which omitted the words "deadly weapon" from the definition of second-degree murder was not prejudicial to defendant, especially since the court had correctly defined the offense in the original instructions.

State v. Rich

4. **Criminal Law § 168— instructions favorable to defendant — review on appeal**

The defendant cannot complain of instructions favorable to him.

APPEAL by defendant from *Hubbard, Judge*, 29 March 1971 Criminal Session of Superior Court, CARTERET County.

Defendant was tried on a bill of indictment, proper in form, charging that on 17 October 1970, he did feloniously, wilfully and of his malice aforethought kill and murder with force and arms Thomas Sidney Lea, Jr. Defendant entered a plea of not guilty. Evidence in the light most favorable to the State tends to show that the deceased and a companion, Clyde Wilson, went to the Elks Club in Morehead City at about 9:30 p.m. on 16 October 1970. They spent some time there drinking.

When they left the club they were met outside by Edward Herring and the defendant, Thomas Rich, who asked for a ride. The deceased and Clyde Wilson had not seen Edward Herring or the defendant, Thomas Rich, prior to this time. When they left the club, the deceased was driving the Volkswagen bus, Clyde Wilson was in the right front seat, the defendant was in the left back seat behind the deceased, and Edward Herring was in the right back seat behind Clyde Wilson.

After they had ridden some distance, the deceased stopped the vehicle, told his passengers that he would go no further, and told them to get out. Defendant said "You are not going to get me all the way down here and make me walk all the way back home." Clyde Wilson got out on the passenger side to open the sliding back door for the defendant and Herring. After Clyde Wilson had exited the vehicle, the deceased yelled from inside "They're fighting me in here." Clyde Wilson saw the defendant have his hand up near the chest of the deceased and when defendant pulled his hand away, he saw the blade of a knife. When Clyde Wilson opened the sliding back door, the defendant and Herring jumped out and ran past Wilson. Clyde Wilson got back in the front seat and the deceased drove off rapidly causing the sliding back door on the passenger side to close by itself. The deceased drove several blocks before stopping and slumping over the wheel.

The State's medical evidence tends to show that the deceased was treated for stab wounds at the hospital; that his lungs

collapsed; and that he bled to death as a result of a stab wound to his chest, lungs and thoracic arteries. The State's evidence also tends to show that when defendant was taken into custody, he was wearing the same clothes that he had on at the time of the stabbing; that the clothing had red stains on them which were identified as Type A blood; and that the blood found on defendant's clothing was found to be of a different type than defendant's own blood which was Type B.

The defendant offered no evidence. The defendant's motion for dismissal of the first-degree murder charge was allowed but a motion for nonsuit as to all charges was denied. Charges of murder in the second degree and manslaughter were submitted to the jury, and a verdict of guilty to murder in the second degree was returned. From a judgment sentencing defendant to 25-30 years in prison, defendant appealed.

*Attorney General Morgan by Assistant Attorney General Rosser for the State.*

*Nelson W. Taylor and Dennis M. Marquardt for defendant appellant.*

MORRIS, Judge.

[1] Following the impaneling of the jury but prior to the presentation of any evidence, the defendant moved that a daily transcript of the testimony be had "because of the gravity of the case." The court in denying this motion said, "I think the motion comes too late and should have been given time to get another reporter." The defendant assigns as error the denial of this motion. Citing *Griffin v. Illinois,* 351 U.S. 12, 100 L. Ed. 891, 76 S.Ct. 595 (1956), and *Douglas v. California,* 372 U.S. 353, 9 L. Ed. 2d 811, 83 S.Ct. 814 (1963), as authority, defendant contends that the denial of a motion for a daily transcript was a violation of his constitutional rights under the due process and equal protection clauses of the Fourteenth Amendment. *Griffin* held that indigent defendants convicted of criminal charges in Illinois state courts were entitled to a copy of the trial transcript at State expense since they could not otherwise perfect their appeals. *Douglas* held that indigent defendants were entitled to court-appointed counsel to assist in perfecting their appeals to the state courts. The record in this case does not reveal the financial condition of the defendant at the time of his trial, but assuming that defendant was an indigent, we

believe the trial court properly denied his motion for a daily transcript.

In *Griffin* and *Douglas* the United States Supreme Court determined that a transcript and counsel were absolutely *necessary* for the defendants to exercise their right of appeal under existing appellate practice, and that the defendants were effectively denied that right solely because of indigency. In his concurring opinion in *Griffin,* Justice Frankfurter said:

> "Of course a State need not equalize economic conditions. A man of means may be able to afford the retention of an expensive, able counsel not within the reach of a poor man's purse. Those are contingencies of life which are hardly within the power, let alone the duty, of a State to correct or cushion.", at p. 23.

Justice Douglas in *Douglas v. California, supra,* also recognized that "Absolute equality is not required; lines can be and are drawn and we often sustain them." In North Carolina an indigent appellant is entitled to receive a copy of the trial transcript at State expense in order to perfect an appeal. G.S. 7A-450, et seq.; *State v. Roux,* 263 N.C. 149, 139 S.E. 2d 189 (1964). Viewing the record in this case, there is no showing that defendant was deprived of an opportunity to obtain adequate and effective appellate review. See *State v. Allen,* 4 N.C. App. 612, 167 S.E. 2d 505 (1969). Here there has been no deprivation of a substantial constitutional right but merely a dilatory effort on defendant's part to obtain daily transcripts for his own convenience and without any showing of necessity. Defendant has shown nothing to support his contention that he was entitled, as a matter of right, to a daily transcript, and his exception is overruled.

[2] The defendant also assigns as error the refusal of the court to allow the use of photographs on cross-examination of witnesses for the State to illustrate their testimony when said photographs were never introduced into evidence. Photographs must be introduced *in evidence* before they may be used to illustrate testimony. Stansbury, N.C. Evidence 2d, § 34, p. 69. See also 3 Strong, N.C. Index 2d, Evidence, § 25, p. 637; 3 Wigmore, Evidence 3d, § 790. None of the photographs in this case was offered or introduced into evidence and none is included in the record. Defendant cites *Blackwell v. Lee and Tart v. Lee,* 248

N.C. 354, 103 S.E. 2d 703 (1958), as supporting his contention that he has a "right" to use photographs not admitted in evidence and that the denial of this right is prejudicial error requiring a new trial. As we construe *Blackwell, supra,* it merely said that there was no prejudicial error in the use of photographs not admitted in evidence on cross-examination, but no "right" was established to use photographs not admitted into evidence. Even if defendant could have introduced the photographs in evidence during presentation of the State's case, their admissibility and use are in the discretion of the court, and we find no abuse of discretion here. 2 Strong, N.C. Index 2d, Criminal Law, § 43, *Smith v. Dean,* 2 N.C. App. 553, 163 S.E. 2d 551 (1968). Defendant's assignment of error is overruled.

[3] In his charge to the jury, the court properly instructed them that they could render one of three verdicts; i.e., murder in the second degree, manslaughter or not guilty. The court also correctly defined second-degree murder in his charge as the unlawful killing of a human being with malice. In further charging the jury, the court said:

> "The State must prove beyond a reasonable doubt that the defendant, Rich, *intentionally cut or stabbed the deceased, Mr. Lea, with a knife, a deadly weapon,* and that Mr. Lea's death was a natural and probable result of Mr. Rich's act. If the State has satisfied you of those facts beyond a reasonable doubt that the *killing was unlawful and was done with malice, which nothing else appearing, constitutes murder in the second degree.* Even if the State proves, otherwise proves the facts as to murder, the crime may be reduced to manslaughter, if the defendant's act was done without malice. However, the defendant has the burden of proving not beyond a reasonable doubt but to your satisfaction, the absence of malice." (Emphasis added.)

And the court further instructed:

> "If you find from the evidence and beyond a reasonable doubt that on or about the 17th day of October 1970 of last year the defendant, Rich, *intentionally stabbed the deceased Sidney Lea with a deadly weapon, a knife,* and that Mr. Lea's death was a natural and probable result of Mr. Rich's act, then it would be your duty to return a verdict of guilty of murder in the second degree, unless the defend--

ant has satisfied you that he stabbed or killed the deceased in the heat of sudden passion which was produced by acts of the deceased, Mr. Lea, which had a natural tendency to produce such passion in the defendant and that this passion continued to exist until he killed the deceased, in which case it would be your duty to return a verdict of guilty of manslaughter." (Emphasis added.)

The jury retired but later returned to request that the court give additional instructions as to the three charges. In granting their request, the court charged:

"COURT: I charged you that you could bring in one of three verdicts.

JUROR: Right.

(COURT: Murder in the second degree, manslaughter or not guilty. Murder in the second degree is the unlawful killing of a human being with malice, but without the elements of premeditation and deliberation. Where it is shown beyond a reasonable doubt that there was an *intentional killing, malice is presumed.)* (Defendant's Exception No. 35)." (Emphasis added.)

[3, 4]  From this portion of the charge defendant excepts and assigns as error the omission of the words "deadly weapon." The defendant contends that malice may not be presumed unless the killing was done with a deadly weapon. Our Supreme Court has said "Malice exists as a matter of law 'whenever there has been an unlawful and intentional homicide without excuse or mitigating circumstance.' (Citation omitted.)" *State v. Moore,* 275 N.C. 198, 206, 166 S.E. 2d 652, 657 (1969); see also 4 Strong, N.C. Index 2d, Homicide, § 5, p. 197. In any event, the charge in this case when read contextually is not confusing or misleading and is not prejudicial. The court's charge was not prejudicial to the defendant in omitting the words "deadly weapon" when all the evidence establishes that the deceased was killed by defendant with a deadly weapon and the only question arising is whether the act was intentional or accidental. *State v. Franklin,* 229 N.C. 336, 49 S.E. 2d 621 (1948). The court correctly charged the jury on the presumption of malice prior to giving the instruction which defendant now challenges on appeal. The confusion of giving conflicting instructions was

not prejudicial error since the definition complained of placed upon the State the added burden of proving a specific intent to kill. The defendant cannot complain of instructions favorable to him. *State v. Winford,* 279 N.C. 58, 181 S.E. 2d 423 (1971).

The defendant's other assignments of error have been carefully examined and considered and are overruled.

Affirmed.

Judges CAMPBELL and PARKER concur.