IN THE MATTER OF: JULIE RENEE BULLABOUGH, JUVENILE

No. 8725DC720

(Filed 15 March 1988)

1. **Infants § 10— juvenile delinquent—right to transcript of proceedings at State expense**

Proceedings under Section 7A-636 of the Juvenile Code are to be reported and transcribed as other "civil trials" in accordance with N.C.G.S. § 7A-198, and a transcription of the record of this particular juvenile proceeding was "required," as the term is used in that statute, because a juvenile is presumed in-

digent; an indigent appellant is entitled to a copy of the trial transcript at State expense if needed to provide an adequate and effective appellate review; and the record disclosed no adequate alternative devices which would have fulfilled the same functions as the transcript.

### 2. Infants § 10— right of juvenile to transcript of delinquency hearing—reimbursement of attorney for transcription

A juvenile was not prejudiced by the court's failure to direct the clerk of superior court to transcribe the record, since the record was timely reduced to writing by the juvenile's attorney, but the attorney should be reimbursed for his reasonable expenses in having the transcript prepared, since the juvenile was entitled to the transcript at State expense.

### 3. Infants § 20— oral entry of juvenile order proper

Under Rule 58 of the Rules of Civil Procedure, a judge may make an oral entry of a juvenile order provided the order is subsequently reduced to written form as required by N.C.G.S. § 7A-651.

### 4. Infants § 18— juvenile delinquent—cross-examination about running away from home—admissibility of evidence

In a juvenile proceeding to consider detention of a juvenile who had violated conditions of her probation by running away from the home where she had been placed, there was no merit to the juvenile's contention that the assistant district attorney's cross-examination of her about twice running away from the county receiving home was error because this information was irrelevant, since the evidence was testimony by the juvenile herself and therefore reliable, accurate, and competent, and since the evidence was relevant in assisting the trial judge to determine the needs of the juvenile.

### 5. Infants § 21— juvenile delinquent—appeal—failure to set out omitted conclusions

The issue of the authority of a court counselor to issue a secure custody order was not properly before the appellate court where the juvenile failed to set out in the record on appeal the substance of any omitted findings or conclusions as required by N.C. R. App. P. 10(b)(2).

### 6. Infants § 20— juvenile delinquent—secure custody order—no grounds

No grounds existed for a secure custody order in this juvenile proceeding under the authority of N.C.G.S. § 7A-574(b)(2) where the juvenile had not willfully failed to appear, and there was no allegation that the juvenile committed any acts which damaged property or injured persons while on probation.

### 7. Infants § 21— unlawful detention of juvenile delinquent—issue not raised before trial court

A juvenile waived any right she had to assert her unlawful detention where the issue was not raised before the trial court, and the juvenile failed to file any habeas corpus action; furthermore, there was no showing that the unlawful detention in any way prejudiced the juvenile in the adjudicatory or dispositional hearing.

8. **Infants § 20— emergency commitment of juvenile improper—juvenile not prejudiced**

   The trial court erred in ordering an "emergency commitment" of the juvenile to the Division of Youth Services without stating any reasons or findings of fact supporting the order, but the juvenile did not show that the error prejudiced her in the adjudicatory or dispositional hearings.

9. **Infants § 20— juvenile delinquent—finding that dispositional alternatives were unsuccessful or inappropriate—no supporting evidence**

   The trial court's finding that alternatives to the commitment of a juvenile were either attempted unsuccessfully or were inappropriate was not supported by the evidence and was therefore error where the record was silent as to any evidence which would assist the court in determining the needs of the juvenile; there was no evidence that the court even considered non-custodial alternatives to commitment as outlined in N.C.G.S. § 7A-649; there was no evidence that the court considered any other "community-level resources" not referred to in the statute; and there was no evidence to support the finding that the juvenile would not adjust in her own home while "other services [were] being provided."

10. **Infants § 18— juvenile's unauthorized use of vehicle—juvenile not a threat to persons or property**

    The unauthorized use of a motor vehicle, standing alone without further evidence, was insufficient to support a finding that a juvenile was a threat to persons or property.

APPEAL by juvenile from *Bogle (Ronald E.), Judge*. Order entered 24 February 1987 in District Court, CATAWBA County. Heard in the Court of Appeals 12 January 1988.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General David Gordon, for the State.*

*Simpson, Aycock, Beyer & Simpson, by Michael Doran, for respondent-appellant.*

GREENE, Judge.

This is a juvenile proceeding in which the district court judge found that the juvenile, Julie Renee Bullabough, violated the terms of her juvenile probation. The trial judge committed the juvenile to the Division of Youth Services for an indefinite term not to exceed one year. The juvenile appeals.

On 31 July 1986, the district court adjudicated the juvenile as delinquent and placed her on juvenile probation for the unauthorized use of a motor vehicle. One of the conditions of the probation

required the juvenile to "[a]ccept whatever placement made by her custodian, Catawba County Department of Social Services, and not run away from that placement."

On 7 January 1987, the juvenile court counselor filed a motion requesting a court review of the 31 July 1986 dispositional order. In the motion, the court counselor alleged the juvenile violated the terms of her probation in that she failed to return to the Mills Home where she had been placed by the Catawba County Department of Social Services. Prior to filing the juvenile summons on 16 February 1987, the court counselor issued an "Order to Assume Custody" on 7 January 1987. The order directed placement of the juvenile in secure custody in the Gaston Regional Detention Center. On 13 February 1987, this order was served on the juvenile and the juvenile was placed in the detention center. On 18 February 1987, the district court judge entered an order directing continued secure custody for the juvenile until a hearing on the merits on 24 February 1987.

Among those present at the hearing on the merits were the attorney for the juvenile, representatives from the Department of Social Services, and the Assistant District Attorney. At the hearing, the juvenile admitted she had violated the terms of her probation. Based on that admission, the trial judge found her to be within the jurisdiction of the court as a delinquent. The court then proceeded to the dispositional hearing.

At the dispositional hearing, the Assistant District Attorney introduced into evidence a portion of the Catawba County Department of Social Services' (hereinafter the "Department") "custody review summary." In that summary, the Department recommended placement of the juvenile in "a more restrictive atmosphere such as training school." The Department's summary also stated "group home, foster home and treatment facilities have all been pursued and are not available." The court further considered the court counselor's report which indicated the juvenile was fifteen years old, one of seventeen children, and that the mother of the juvenile resided with one of her daughters, a sister of the juvenile. The court counselor also recommended commitment to training school.

Further evidence showed that on 9 September 1986, the juvenile was placed in a group home by the Department and remained

there until 4 January 1987, when she refused to return from a home visit with her mother. On cross-examination, the juvenile admitted that in March and May of 1986, she had run away from the county receiving home. She also admitted telling the Department that "the more places they put me at, the more I am going to run until they let me go home." The sister of the juvenile testified she owned a 34-acre farm, that the juvenile's mother lived with her and that the juvenile could live with her on the farm.

After hearing the evidence, the trial judge stated in open court that the juvenile had a frequent history of running away and found there was "no less intrusive means of assisting Julie than commitment to the Division of Youth Services and that her best interest [would] be served by the entry of this order." After committing her to the Division of Youth Services, the judge further ordered the commitment to be "an emergency commitment."

On 3 March 1987, the court filed a written order which included the following pertinent findings:

> [T]here are no community based facilities in Catawba County that will accept Julie . . .;
>
>      . . . .
>
> (2) The juvenile has not or would not adjust in her own home on probation or while other services are being provided;
>
> (3) Community residential care has already been utilized or would not be successful or is not available;
>
> (4) The juvenile's behavior constitutes some threat to persons or property in the community;
>
> (5) The alternatives to commitment as contained in G.S. 7A-649 have been attempted unsuccessfully or are inappropriate.

On 27 April 1987, the court entered an order directing that the records of the hearing be reduced to a written transcript but denied the juvenile's request that this be done by the Office of the Clerk of Superior Court. The transcript was subsequently prepared by the juvenile's attorney from the tapes provided by the Clerk's office.

This appeal presents the following issues: (I) whether the Clerk of the Superior Court has a duty to reduce to a written transcript the electronically recorded tapes of a juvenile proceeding; (II) whether the written order which included findings not announced in open court was error; (III) whether the trial court committed error in allowing cross-examination of the juvenile as to behavior occurring prior to the delinquent act for which the defendant was on probation; (IV) whether holding the juvenile in secure custody pending the hearing was error because (A) the court counselor had no authority to issue a secure custody order or (B) N.C.G.S. Sec. 7A-574 does not authorize secure custody of a juvenile who is alleged to have violated probation; (V) whether the emergency commitment of the juvenile was error; (VI) whether there is evidence in the record to support the findings of fact that (A) alternatives to commitment to the Division of Youth Services had been attempted unsuccessfully or were inappropriate and (B) the juvenile's behavior constituted a threat to persons or property in the community.

I

[1] The adjudicatory and dispositional hearings were recorded by a tape recorder. An order was presented to the trial judge by the juvenile's attorney requesting that the records of the proceedings "be reduced to a written transcript by the Office of the Clerk of Superior Court." The trial judge refused to direct the Clerk to prepare the written transcript and simply ordered its preparation without stating who had that responsibility. An employee of the juvenile's attorney subsequently prepared the transcript. The juvenile contends the Clerk of Superior Court had the duty to transcribe the tape of the proceedings. In addition, the juvenile's attorney maintains he should be reimbursed for his costs in transcribing the proceedings.

Section 7A-636 (1986) of the North Carolina General Statutes requires the recording of juvenile adjudicatory and dispositional hearings by either stenographic notes or by electronic or mechanical means. The Juvenile Code is silent as to who has the duty to operate the recording device and the duty to transcribe the record. The Code does provide that the record shall be reduced to a written transcript only when "timely notice of appeal has been given." N.C.G.S. Sec. 7A-636.

At the time of this hearing on 24 February 1987, the Clerk of Superior Court had the duty in all district court "civil trials" not only to operate recording devices, but to transcribe the record as required. *See* N.C.G.S. Sec. 7A-198(c) (1986). (Effective 16 June 1987, the statute was amended to require the transcription of the record in "civil trials" by "any person designated by the Administrative Office of the Courts." *Id.* (Supp. 1987).) Therefore, we inquire into whether a juvenile probation hearing is a "civil trial" within the meaning of N.C.G.S. Sec. 7A-198.

Our courts have held that juvenile delinquency proceedings are not "criminal prosecutions." *In re Burrus*, 275 N.C. 517, 529, 169 S.E. 2d 879, 886 (1969), *aff'd sub nom.*, *McKeiver v. Pennsylvania*, 403 U.S. 528, 550-51, 29 L.Ed. 2d 647, 664 (1971) (juvenile delinquency proceedings not equated with criminal prosecutions). Therefore, a Juvenile Code proceeding may be classified as either a civil action or a special proceeding.

With a few exceptions enumerated in the statute, the Legislature has designated the superior court division as the proper division to hear special proceedings. N.C.G.S. Sec. 7A-246. The listed exceptions are: proceedings under the Protection of the Abused, Neglected or Exploited Disabled Adult Act, proceedings for involuntary commitment to treatment facilities, and proceedings involving the appointment of guardians and administration of certain trusts. Proceedings under the Juvenile Code are not among these exceptions. As the district court division has exclusive original jurisdiction of Juvenile Code matters, N.C.G.S. Secs. 7A-523 and 7A-517(9) (1986 and Supp. 1987), actions under the Juvenile Code are not special proceedings. Furthermore, our courts have held that appeals *in forma pauperis* from juvenile proceedings are governed by N.C.G.S. Sec. 1-288 which refers to appeals from *civil actions* tried in district court. *See In re Burrus*, 275 N.C. at 535, 169 S.E. 2d at 890; *In re Shields*, 68 N.C. App. 561, 562, 315 S.E. 2d 797, 798 (1984). Accordingly, we hold proceedings under Section 7A-636 of the Juvenile Code are to be reported as other "civil trials" in accordance with N.C.G.S. Sec. 7A-198.

We now determine if the transcription of the record of the juvenile proceeding was "required" as that term is used in N.C.G.S. Sec. 7A-198(c). An indigent appellant is entitled to a copy

of the trial transcript at State expense if needed to provide an adequate and effective appellate review. *State v. Roux*, 263 N.C. 149, 157, 139 S.E. 2d 189, 195 (1964); *State v. Rich*, 13 N.C. App. 60, 63, 185 S.E. 2d 288, 290 (1971), *cert. denied*, 280 N.C. 304, 186 S.E. 2d 179 (1972). This appellant, as a juvenile, is presumed indigent. N.C.G.S. Sec. 7A-584(b). Whether a transcript was necessary for the appeal can be determined by considering:

> (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript.

*State v. Matthews*, 295 N.C. 265, 289, 245 S.E. 2d 727, 741 (1978) (quoting *Britt v. North Carolina*, 404 U.S. 226, 227, 30 L.Ed. 2d 400, 403-04 (1971)), *cert. denied*, 439 U.S. 1128, 59 L.Ed. 2d 90 (1979).

[2] Here, the trial court ordered preparation of the transcript of the proceedings. The record discloses no adequate alternative devices that would have fulfilled the same functions as the transcript. *See Britt*, 404 U.S. at 230, 30 L.Ed. 2d at 405 (defendant claiming right to free transcript does not bear burden of proving inadequate alternatives suggested by the State in hindsight). Therefore, the transcript was necessary for this appellant to prepare her appeal and was "required" under N.C.G.S. Sec. 7A-198(c). The trial court was in error in failing to direct the Clerk of the Superior Court to transcribe the record. However, as the record was timely reduced to writing by the juvenile's attorney, there has been no prejudicial error. *See Glenn v. Raleigh*, 248 N.C. 378, 383, 103 S.E. 2d 482, 487 (1958) (in order to justify a new trial, error must be material and prejudicial with a different result likeiy).

The juvenile's attorney requests reimbursement for the expenses he incurred in transcribing the tapes. As we have determined the juvenile was entitled to the transcript at State expense, her attorney should be reimbursed for his reasonable expenses in having the transcript prepared. *See* N.C.G.S. Sec. 7A-450(b) ("it is the responsibility of the State to provide [an indigent] with counsel and the other necessary expenses of representation").

## II

[3]　The juvenile next argues that since the trial judge announced findings of fact and conclusions of law in open court he was precluded from entering a written order that included any findings of fact or conclusions of law not announced in open court.

Section 7A-651 of our General Statutes does not require the trial judge to announce in open court his findings and conclusions, mandating only that the *terms* of the disposition be stated in open court with "particularity." The terms of the disposition are to include the "kind, duration and the person who is responsible for carrying out the disposition and the person or agency in whom custody is vested." N.C.G.S. Sec. 7A-651. The statute does not require the written dispositional order to contain "appropriate findings of fact and conclusions of law." *Id.*

As noted earlier, actions under the Juvenile Code are in the nature of civil actions. As such, proceedings in juvenile matters are to be governed by the Rules of Civil Procedure, unless otherwise provided by the Juvenile Code or some other statute. *See* N.C.G.S. Sec. 7A-193 ("[e]xcept as otherwise provided in this Chapter, the civil procedure provided in Chapters 1 and 1A of the General Statutes applies in the district court division of the General Court of Justice"); N.C.G.S. Sec. 1A-1, Rule 1 (1983) (Rules of Civil Procedure govern "in all actions and proceedings of a civil nature except where a differing procedure is prescribed by statute"); *see also In re Clark*, 303 N.C. 592, 598 n. 3, 281 S.E. 2d 47, 52 n. 3 (1981) (proceedings to terminate parental rights are either civil actions or special proceedings, both of which are governed by the Rules of Civil Procedure, "except where a different procedure may be prescribed by statute"). Our review of the Juvenile Code reveals no statute except N.C.G.S. Sec. 7A-651 relating to the procedural requirements for the entry of a dispositional order. Therefore, we evaluate the procedural validity of the dispositional order in light of the Rules of Civil Procedure and N.C.G.S. Sec. 7A-651. *See In re Moore*, 306 N.C. 394, 400, 293 S.E. 2d 127, 130-31 (1982) (court applied Rule 58 to determine time of entry of order in termination of parental rights cases), *appeal dismissed*, 459 U.S. 1139, 74 L.Ed. 2d 987 (1983).

The juvenile argues the trial judge erred in making certain findings and conclusions in the written order which he did not

state in open court. However, the *terms* of the disposition in the oral and written statements were the same. Furthermore, no juvenile code statute precludes oral entry of a juvenile dispositional order. Therefore, under Rule 58 of the Rules of Civil Procedure, we hold a judge may make an oral entry of a juvenile order provided the order is subsequently reduced to written form as required by Section 7A-651.

Pursuant to Rule 58, the trial judge has the authority to "make a written judgment that conforms in general terms with an oral judgment pronounced in open court." *Morris v. Bailey*, 86 N.C. App. 378, 389, 358 S.E. 2d 120, 126 (1987); *see also Hightower v. Hightower*, 85 N.C. App. 333, 337, 354 S.E. 2d 743, 745 (after "entry" of judgment in open court, a trial court retains authority to approve judgment and direct its prompt preparation and filing), *cert. denied*, 320 N.C. 792, 361 S.E. 2d 76 (1987). The written order here conforms generally with the oral announcement of the order in open court and therefore the written order was valid. Accordingly, the dispositional order entered by the trial judge was proper under both Section 7A-651 and Rule 58.

## III

[4] The juvenile argues the Assistant District Attorney's cross-examination of her about twice running away from the county receiving home was error because this information was irrelevant. The acts about which she was questioned occurred prior to the delinquent act for which the juvenile was placed on probation and nothing in the record indicates she was adjudicated undisciplined for these acts.

The dispositional hearing is to be informal and the judge is permitted to consider any evidence "concerning the needs of the juvenile." N.C.G.S. Sec. 7A-640. The trial judge was not restricted to consideration of only those acts for which there had been an adjudication. If the information presented is determined by the trial judge to be reliable, accurate and competently obtained, he may properly consider it. *See In re Vinson*, 298 N.C. 640, 669, 260 S.E. 2d 591, 608 (1979) (trial judge has wide discretion in determining admissibility of unadjudicated and unrelated acts but must first determine that evidence is "reliable and accurate and that it was competently obtained"); *In re Barkley*, 61 N.C. App. 267,

270-71, 300 S.E. 2d 713, 716 (1983) (unadjudicated acts may be considered in dispositional hearing).

The juvenile testified she had run away from the county receiving home and therefore the evidence was reliable, accurate and competent. In any event, the juvenile has objected to the evidence only on the grounds of relevancy and the evidence was certainly relevant in assisting the trial judge to determine the "needs of the juvenile."

## IV

On 7 January 1987, the juvenile was placed in secure custody pursuant to an order signed by the court counselor. On the same day, the court counselor filed a motion for review, alleging a violation of the juvenile probation order. The juvenile first argues the court counselor was without the authority to execute the secure custody order. Second, she contends even if the counselor had the authority, there existed no legal grounds for issuance of a secure custody order.

## A

[5] Section 7A-573 of our General Statutes authorizes a district court judge to place a juvenile in secure or non-secure custody pursuant to the criteria established in N.C.G.S. Sec. 7A-574. The chief district court judge may delegate this authority "by administrative order" to other persons including court counselors. N.C.G.S. Sec. 7A-573. The order of delegation "shall be filed in the office of the clerk of superior court." *Id.* If the juvenile is alleged to have committed a delinquent or undisciplined act, only "a judge or the chief court counselor or his counseling staff" may issue the custody order. *Id.*

The record does not indicate whether the chief district court judge authorized the court counselor to issue secure custody orders. However, the juvenile has failed to set out in the record on appeal the substance of any omitted findings or conclusions as required by N.C. R. App. P. 10(b)(2) and therefore the issue of the authority of the court counselor to issue the secure custody order is not properly before this court.

B

The juvenile further contends N.C.G.S. Sec. 7A-574 does not authorize secure custody of a juvenile who is alleged only to have violated the terms of her probation. Our Juvenile Code allows secure custody of a juvenile on probation in two instances, both of which are set out in N.C.G.S. Sec. 7A-574. The pertinent subsections provide:

> (b) When a request is made for secure custody, the judge may order secure custody only where he finds there is a reasonable factual basis to believe that the juvenile actually committed the offense as alleged in the petition, and
>
> . . . .
>
> (2) That *the juvenile has willfully failed to appear* on a pending delinquency charge or *on charges of violation of probation* or conditional release, *providing the juvenile was properly notified;*
>
> . . . .
>
> (c) When a juvenile has been adjudicated delinquent, the judge may order secure custody pending the dispositional hearing or pending placement of a delinquent juvenile pursuant to G.S. 7A-649. *The judge may also order secure custody for a juvenile who is alleged to have violated the conditions of his probation* or conditional release *only if the juvenile is alleged to have committed acts that damage property or injure persons.*

N.C.G.S. Secs. 7A-574(b)(2) and 7A-574(c) (emphasis added).

[6] No grounds exist for a secure custody order in the present case under the authority of Section 7A-574(b)(2). That subsection permits secure custody where the juvenile has "willfully failed to appear . . . on charges of violation of probation. . . ." The custody order here was issued prior to any notification to the juvenile of the pending hearing concerning her alleged probation violation and therefore could not serve as a basis for the secure custody order, as she had not "willfully failed to appear."

Nor was there authority under N.C.G.S. Sec. 7A-574(c) to order secure custody for this juvenile where there was no allega-

tion the juvenile committed any "acts that damage property or injure persons" while on probation. The motion for review alleged only that the juvenile had "failed to return to the 'Mills Home,' Thomasville, N.C., where she had been placed by her custodian, the Catawba County Department of Social Services." Section 7A-574(c) does not authorize issuance of a secure custody order for a juvenile who has previously been adjudicated delinquent simply because the juvenile is now alleged to have violated the terms of her probation. Therefore, the juvenile was unlawfully detained from 13 February 1987, the date of the execution of the secure custody order, until 24 February 1987, the date of the judicial adjudication and disposition.

[7] We must further determine if the unlawful detention occurring prior to the adjudication is reversible error. Our Supreme Court has held that the failure to assert a constitutional or statutory right in the trial court is a waiver of that right. *See State v. Gaiten,* 277 N.C. 236, 239, 176 S.E. 2d 778, 781 (1970). Here, the record does not reflect that the issue of the unlawful detention of the juvenile was raised before the trial court. The juvenile also failed to file any habeas corpus action, which is a proper method to challenge an unlawful detention. *See In re Burton,* 257 N.C. 534, 540-41, 126 S.E. 2d 581, 586 (1962). Therefore, the juvenile's failure to raise the issue below is deemed a waiver of any claim she now has to assert her unlawful detention. Furthermore, there has been no showing that the unlawful detention in any way prejudiced the juvenile in the adjudicatory or dispositional hearing. *See State v. Easterling,* 300 N.C. 594, 609, 268 S.E. 2d 800, 809 (1980) (prejudice exists when there is a reasonable possibility a different result would have been reached if no error); *see also State v. Burgess,* 33 N.C. App. 76, 78, 234 S.E. 2d 40, 41 (1977) (failure to take criminal defendant before a magistrate without unnecessary delay did not entitle defendant to new trial without showing of prejudice).

V

[8] The juvenile next contends the trial judge committed error in ordering an "emergency commitment" to the Division of Youth Services. While the Juvenile Code does not use the words "emergency commitment," the effect of the trial court's order was to place the juvenile in custody pending appeal. Section 7A-668 per-

mits the trial judge to enter temporary orders affecting the custody of the juvenile pending disposition of an appeal. The statute states: "For compelling reasons which must be stated in writing, the judge may enter a temporary order affecting the custody or placement of the juvenile as he finds to be in the best interest of the juvenile or the State." Here, the order was in writing but merely stated this was an "emergency commitment" without stating any reasons or findings of fact supporting the order. This was error. Again, however, the juvenile has not shown the error to have prejudiced her in the adjudicatory or dispositional hearings. *See In re Bass*, 77 N.C. App. 110, 117, 334 S.E. 2d 779, 783 (1985).

## VI

The juvenile finally argues that certain findings of fact were not supported by the evidence. Prior to any commitment to the Division of Youth Services, the trial judge must first find that

the alternatives to commitment as contained in G.S. 7A-649 have been attempted unsuccessfully or are inappropriate and that the juvenile's behavior constitutes a threat to persons or property in the community.

N.C.G.S. Sec. 7A-652(a). The findings must be supported by some evidence in the record. *In re Vinson*, 298 N.C. 640, 672, 260 S.E. 2d 591, 610 (1979); *In re Khork*, 71 N.C. App. 151, 155, 321 S.E. 2d 487, 490 (1984).

Here, the trial judge made the necessary findings of fact, essentially using the very language employed by the statute. However, our review of the record does not disclose evidence to support the required findings.

## A

[9] First, on the finding regarding alternatives to commitment, the record shows that the Department of Social Services recommended a "restrictive atmosphere such as training school" indicating the juvenile would run away from any less restrictive placement. The department's recommendation further stated that "group homes, foster homes and treatment facilities have all been pursued and are not available." The juvenile herself testified that "the more places they put me at, the more I am going to run until

they let me go home." The court counselor's report indicated that no resources were available for the juvenile and also recommended commitment to training school.

The alternatives to a commitment to the Division of Youth Services given in N.C.G.S. Sec. 7A-649 include: a suspended imposition of a more severe disposition, restitution, fine, supervised community service, a supervised day program, a community-based program of academic or vocational education, a professional residential or non-residential treatment program, intermittent confinement in a detention facility, supervised probation, and forfeiture of privileges to operate a motor vehicle.

In determining the appropriate disposition, the court should be guided by the language of N.C.G.S. Sec. 7A-646 which provides in pertinent part:

> If possible, the initial approach should involve working with the juvenile and his family in their home so that the appropriate community resources may be involved in care, supervision and treatment *according to the needs of the juvenile.* Thus, the *judge should arrange for appropriate community-level services* to be provided *to the juvenile and his family* in order to strengthen the home situation.

> In choosing among statutorily permissible dispositions for a delinquent juvenile, the judge shall select the least restrictive disposition both in terms of kind and duration, that is appropriate to the seriousness of the offense, the degree of culpability indicated by the circumstances of the particular case and the age and prior record of the juvenile. *A juvenile should not be committed to training school or to any other institution if he can be helped through community-level resources.*

(Emphasis added.)

This statute necessarily requires the judge to first determine the needs of the juvenile and then to determine the appropriate community resources required to meet those needs in order to strengthen the home situation of the juvenile. In selecting among the dispositional alternatives, the trial judge is required to select the least restrictive disposition taking into account the seriousness of the offense, degree of culpability, age, prior record, and

circumstances of the particular case. The judge must also weigh the state's best interest and select a disposition consistent with public safety, *In re Jackson*, 84 N.C. App. 167, 173, 352 S.E. 2d 449, 453 (1987), and within the judge's statutorily granted authority. *See In re Wharton*, 305 N.C. 565, 290 S.E. 2d 688 (1982) (juvenile court exceeded authority by ordering creation of foster home for juveniles); and *In re Brownlee*, 301 N.C. 532, 553, 272 S.E. 2d 861, 874 (1981) (indicating that in appropriate situations, a juvenile disposition may include use of non-governmental resources).

Here, the record is silent as to any evidence that would assist the court in determining the needs of the juvenile such as psychological evaluations, school records, home evaluations, medical examinations, or a history of abuse or neglect. The record is likewise silent as to any community resources that might be appropriate to meet the needs of the juvenile. While the evidence is sufficient to support the court's finding that community-based custodial placements are inappropriate because the child would run away, there is no evidence the court even considered non-custodial alternatives to commitment as outlined in N.C.G.S. Sec. 7A-649. Nor is there evidence in the record the court considered any other "community-level resources" not referred to in Section 7A-649. *See In re Brownlee*, 301 N.C. at 551, 272 S.E. 2d at 872. ("[t]he relationship of family and friends is an important component in the rehabilitative program for a youthful offender"); *In re Hughes*, 50 N.C. App. 258, 262, 273 S.E. 2d 324, 326 (1981) (commitment to training school should be avoided if juvenile could be helped through community-level resources). While the court did find as a fact that the juvenile would not adjust in her own home while "other services are being provided," there is no evidence in the record to support this finding. Accordingly, the finding that alternatives to commitment were either attempted unsuccessfully or were inappropriate was not supported by the evidence and therefore was error.

B

[10] The trial court also found that the juvenile's behavior constituted a threat to persons or property in the community. The record indicates the juvenile had committed the delinquent act of unauthorized use of a motor vehicle and had run away from sever-

In re Bullabough

al custodial placements outside the home. There is no evidence of any other delinquent activity and no evidence of damage to persons or property. We hold that under the facts here, the unauthorized use of a motor vehicle standing alone without further evidence, was insufficient to support a finding that the juvenile was a threat to persons or property. *See In re Khork*, 71 N.C. App. at 155-56, 321 S.E. 2d at 490 ("Where no evidence of the appropriateness of incarceration is presented in the dispositional hearing, defendant may not be committed based upon the perceived seriousness of the offense alone."). The fact that the juvenile ran away from placements outside her home is not itself evidence of a "threat to persons or property in the community." *See In re Hughes*, 50 N.C. App. at 261, 273 S.E. 2d at 326 (commitment to the Division of Youth Services is not permitted for undisciplined behavior). Accordingly, the finding that the juvenile's behavior constituted a threat to persons or property in the community was not supported by the evidence in the record and was error.

## VII

In conclusion, the order of the trial court committing the juvenile to the Division of Youth Services is vacated and the matter is remanded to the trial court for the entry of an appropriate dispositional order consistent with this opinion. On remand, the trial court should also determine the reimbursement amount due the juvenile's attorney for his reasonable costs in transcribing the record. Furthermore, the "emergency commitment" order entered by the trial court is vacated.

Vacated and remanded.

Judges PARKER and COZORT concur.