IN THE MATTER OF: RANDY RAY GROVES

No. 8827DC534

(Filed 21 February 1989)

**Infants § 20— juvenile delinquent—dispositional alternatives not explored or tried—commitment to training school improper**

In a juvenile delinquency dispositional hearing where the judge was made aware that the child had a substance abuse problem, evidence did not support the judge's finding that alternatives to commitment were tried unsuccessfully or were inappropriate, since there was an inadequate exploration of what alternatives to commitment existed; the only statutory alternative actually attempted was probation; and the judge did not request any medical or psychological evaluations to assist him in assessing the extent of, or fashioning an appropriate response to, the child's asserted drug problem. Moreover, the judge was required by statute to select the least restrictive dispositional alternative in light of the circumstances, and this he did not do when he placed the child in a training school. N.C.G.S. §§ 7A-646, 7A-647, 7A-648, 7A-649, 7A-652(a).

## IN RE GROVES

[93 N.C. App. 34 (1989)]

APPEAL by respondent from *Berlin H. Carpenter, Jr., Judge.* Order entered 31 December 1987 in District Court, GASTON County. Heard in the Court of Appeals 29 November 1988.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General David Gordon, for the State.*

*Office of the Public Defender, by Assistant Public Defender Gay R. Atkins, for respondent-appellant.*

BECTON, Judge.

This is an appeal from a juvenile delinquency dispositional hearing. The question presented is whether community-based alternatives to commitment were sufficiently explored before the juvenile was committed to training school. We conclude they were not, vacate the order, and remand the cause.

I

Juvenile petitions were filed 6 November 1987 alleging that Randy Ray Groves, age 15, was a delinquent juvenile. Randy, who was on probation for one charge of shoplifting, conspiracy to commit shoplifting, and receiving stolen goods, failed to appear at the first scheduled hearing. At a second hearing on 31 December 1987, Randy admitted the allegations of the petitions, namely, that he was intoxicated and disruptive in public, and that he stole five cartons of cigarettes. Randy also admitted that he had a substance abuse problem with Dilaudid (a highly addictive narcotic pain reliever) and cocaine. The court counselor assigned to Randy's case informed the judge that Randy had become ill from drug withdrawal while in detention.

At the dispositional phase of the hearing, Randy's attorney asked that the court counselor look into programs appropriate to Randy's situation. The counselor responded, "[W]e don't have a Drug Rehabilitation Program. His mother has tried to get him into treatment. She does not have any insurance." The judge then suggested training school as a dispositional alternative, since Randy could receive treatment for drug abuse there. The judge explained: "Unfortunately, the State doesn't have any [f]acility short of [t]raining [s]chool that I can put you in right now."

Randy's attorney argued that Randy's offenses were not so serious as to warrant commitment to training school, that training school was not designed to be a drug treatment facility, and that

less restrictive dispositional alternatives existed and should be tried before resorting to commitment to training school. The attorney offered several suggestions, including Barium Springs (a group home), Cedar Springs (a private substance abuse facility), placing Randy in custody of the Department of Social Services through which drug treatment could be arranged, or hospitalization.

The judge responded to these suggestions by stating in part:

[I]t would be dangerous . . . to let him walk out that door . . . in withdrawals[.] . . . [A]ll that [shoplifting] was to get stuff to sell to get dope, wasn't it? . . . You see [Randy], you've got a real big problem and I can't let you out, for your own good. . . . I can't let you walk out that door and go steal something or what have you to get some money to buy some more "coke." It's for your own protection.

The judge then made several findings of fact, including the following:

. . . [T]he *alternatives to commitment have been attempted unsuccessfully or are inappropriate and . . . the juvenile's behavior constitutes a threat* to property of the citizens of this community and particularly *to his own well being.*

(Emphasis added.) The judge ordered Randy to be committed to training school "for an indeterminate period of time not to exceed two (2) years," and further ordered the training school to give Randy a "complete mental and physical examination and . . . [to] provide the necessary treatment for any condition they may find, including but not limited to controlled substance abuse."

II

We first summarize the law applicable to juvenile adjudications.

A. *Disposition Based on Juvenile's Needs*

The focus of the juvenile justice system is not on punishing the juvenile offender but on achieving an *individualized* disposition that meets the juvenile's needs and promotes his best interests. *See In re Brownlee*, 301 N.C. 532, 553, 272 S.E. 2d 861, 873 (1981); N.C. Gen. Stat. Secs. 7A-516(3), 7A-646 (1986) (Supp. 1988). *See also In re Burrus*, 275 N.C. 517, 529, 169 S.E. 2d 879, 889 (1969), *aff'd sub nom. McKiever v. Pennsylvania*, 403 U.S. 528, 551, 29 L.Ed. 2d 647, 664 (1971) (juvenile delinquency proceeding not equivalent to criminal prosecution). The best interest of the State and

**IN RE GROVES**

[93 N.C. App. 34 (1989)]

safety of the public are also factors to be weighed in arriving at an appropriate disposition. *See generally In re Bullabough*, 89 N.C. App. 171, 186, 365 S.E. 2d 642, 650 (1988); N.C. Gen. Stat. Secs. 7A-516, 7A-649, 7A-652 (1986) (Supp. 1988). A wide variety of dispositional alternatives is presented in the Juvenile Code, and a trial judge is free to fashion others in harmony with the individual child's needs. *See, e.g.*, N.C. Gen. Stat. Secs. 7A-647, 7A-648, 7A-649 (1986).

B. *Dispositional Alternatives*

Section 7A-649 lists ten dispositional alternatives for delinquent juveniles, the most severe of which is commitment to training school; the other nine are various "community-level" alternatives. *See Brownlee*, 301 N.C. at 552, 554-55, 272 S.E. 2d at 873, 874-75 (term "community" is interpreted broadly but does not include out-of-state services). Among these alternatives are: suspension of a more severe penalty subject to specified conditions; supervised probation with conditions; ordering participation in a supervised day program, sometimes subject to conditions; intermittent confinement in a detention facility; placement in a community-based educational program; and placement in a professional residential or nonresidential treatment program. N.C. Gen. Stat. Sec. 7A-649 (1986).

Section 7A-647, which is to be read in tandem with Section 7A-649, presents several other community-based dispositional alternatives for delinquent juveniles. One of these is placing custody of the juvenile in the Department of Social Services, through which medical, psychiatric, psychological or other care may be arranged. N.C. Gen. Stat. Sec. 7A-647(2) (1986). The judge may also allow the parent to arrange for necessary care or treatment, and if the parent is unwilling or unable to do so, the judge may order it himself. N.C. Gen. Stat. Sec. 7A-647(3). In that case, "the judge may order the parent to pay the cost of such care . . . [or] [i]f the judge finds the parent is unable to pay the cost of care, the judge may charge the cost to the county." *Id.* Finally, if the juvenile is mentally ill or mentally retarded, the director of the Area Mental Health, Mental Retardation, and Substance Abuse Services may be charged with "mobilizing resources to meet [the child's] needs." *Id.*

Like the other sections cited, Section 7A-648 vests broad discretion in the trial judge to design a plan to meet the delinquent juvenile's needs. Some of the dispositional alternatives listed in that Section allow the child to remain at home with family and

friends. For example, the judge may place the juvenile under the supervision of a court counselor who will secure social, educational, or medical services for the child, or the judge may continue the case for up to six months to permit the family to try to meet the child's needs through placement in a specialized program. N.C. Gen. Stat. Sec. 7A-648 (1986).

C. *Commitment to Training School Most Restrictive Alternative*

The legislative preference for a community-based solution to the juvenile offender problem is reflected throughout the Juvenile Code. *See generally Brownlee*, 301 N.C. at 551, 272 S.E. 2d at 872. The stated purpose of the Code is "[t]o divert juvenile offenders from the juvenile system . . . *so that juveniles may remain in their own homes and may be treated through community-based services.* . . ." N.C. Gen. Stat. Sec. 7A-516(1) (Supp. 1988) (emphasis added). Section 7A-646 mandates that "appropriate community resources" be considered, and if possible, employed, before resorting to the most drastic of dispositional alternatives, commitment to training school. N.C. Gen. Stat. Sec. 7A-646 (1986).

Section 7A-646 further provides:

> In choosing among statutorily permissible dispositions for a delinquent juvenile, *the judge shall select the least restrictive disposition* both in terms of kind and duration, that is appropriate to the seriousness of the offense, the degree of culpability indicated by the circumstances of the particular case and the age and prior record of the juvenile. *A juvenile should not be committed to training school . . . if he can be helped through community-level resources.*

*Id.* (Emphasis added.) Thus, commitment to training school is an option to be reserved only for those extraordinary situations when "there is no reasonable [community-level] alternative open to the court. . . ." *Brownlee*, 301 N.C. at 552, 272 S.E. 2d at 873.

Before a delinquent juvenile may be committed to training school, the judge must find that two tests have been met: first, "that *alternatives to commitment . . . have been attempted unsuccessfully or are inappropriate,*" and second, "that the juvenile's behavior constitutes a threat to persons or property in the community." N.C. Gen. Stat. Sec. 7A-652(a) (1986) (emphasis added). The judge's findings supporting both of these tests must be sufficiently detailed and must be based on "some evidence" appearing

in the record. *In re Khork*, 71 N.C. App. 151, 155, 321 S.E. 2d 487, 490 (1984). Randy assigns error to the judge's finding regarding the first test.

## III

Randy contends that the evidence in the record does not support the finding that alternatives to commitment (1) were tried unsuccessfully or (2) were inappropriate. We agree.

### A.  *Alternatives to Commitment Attempted Unsuccessfully*

We find persuasive Randy's contention that there was no basis for the finding that alternatives to commitment were "attempted unsuccessfully."

First, there was an inadequate exploration of what alternatives to commitment existed. The court counselor failed to inform the judge of any programs that might be appropriate for Randy. Thus, it appears that the judge did not consider any of the broad range of community-level alternatives (except probation) listed in Sections 7A-647, 7A-648, and 7A-649 of the Juvenile Code. Moreover, although Randy's attorney offered several examples of appropriate alternative programs, the judge apparently failed to entertain these, simply accepting as dispositive the court counselor's statement, "[W]e don't have a Drug Rehabilitation Program." Without further inquiry, the judge concluded that training school was the only available program offering Randy the drug treatment he needed. We hold that the judge had an affirmative obligation to inquire into and to seriously consider the merits of alternative dispositions, and that his failure to do so was error.

Second, the only statutory alternative actually *attempted* was probation. None of the remaining alternatives listed in Sections 7A-647, 7A-648, or 7A-649 were attempted prior to ordering commitment. The inability of Randy's mother to pay for drug treatment does not amount to an "attempt," let alone an "unsuccessful attempt" at drug rehabilitation. In our view, the determination of what disposition is appropriate for a given juvenile cannot be predicated on the parent's ability — or inability — to pay. *Accord In re Register*, 84 N.C. App. 336, 346, 352 S.E. 2d 889, 894 (1987); *In re Lambert*, 46 N.C. App. 103, 106, 264 S.E. 2d 379, 381 (1980). Thus, there is no evidence in the record to support the finding that alternatives to commitment were attempted unsuccessfully.

B. *Appropriateness of Alternatives*

Randy also challenges the finding that alternatives to commitment "were inappropriate." Our Supreme Court stated in *In re Vinson* that

> . . . while the final commitment order need not formally state all the alternatives considered by a trial judge in committing a child, *a finding that alternatives are inappropriate must be supported by some showing in the record that the [judge] at least heard or considered evidence as to what those alternative methods of rehabilitating were.*

298 N.C. 640, 672, 260 S.E. 2d 591, 610 (1979) (emphasis added). Here, no alternatives to training school were presented by the court counselor, and therefore none were considered by the trial judge. There is thus no basis in the evidence for the judge's finding that the alternatives were inappropriate.

Furthermore, of necessity, the judge must "first determine the needs of the juvenile [before he can] . . . determine the appropriate community resources required to meet those needs. . . ." *See Bullabough*, 89 N.C. App. at 185, 365 S.E. 2d at 650. Although it is clear from the record that the judge believed Randy's primary problem to be drug-related, we find no evidence that medical or psychological evaluations were performed to assist the judge in assessing the extent of, or fashioning an appropriate response to, Randy's asserted drug problem. *See* N.C. Gen. Stat. Sec. 7A-647(3) ("[i]n any case, the judge may order that the juvenile be examined by a physician, psychiatrist, psychologist or other qualified expert as may be needed for the judge to determine the needs of the juvenile"); N.C. Gen. Stat. Sec. 7A-639 (1986) ("[t]he judge shall proceed to the dispositional hearing upon receipt of sufficient social, medical, psychiatric, psychological, and educational information").

While it may not be necessary to seek medical or psychiatric input in every juvenile case in which drug use is implicated, the case before us provides a compelling example of when such an inquiry is merited. The emphasis throughout the hearing was on Randy's drug use; its role in the offenses he committed; Randy's withdrawal reaction while in custody; his mother's unsuccessful attempt to have him admitted to a treatment program; and the judge's firm belief that Randy needed to overcome his drug dependency.

The superficial inquiry into the nature of Randy's needs and the range of programs that might meet those needs leads us to conclude that there is no support in the record for the finding that the remaining alternatives to training school were "inappropriate" in Randy's case.

### C. *Appropriateness of Incarceration*

Moreover, even apart from the necessity of obtaining treatment for Randy's drug problem, the evidence and findings did not support the appropriateness of incarceration in this case. *See Khork*, 71 N.C. App. at 156, 321 S.E. 2d at 490. The judge was required by statute to select the *least restrictive* dispositional alternative in light of the circumstances. N.C. Gen. Stat. Sec. 7A-646. This he failed to do.

The trial judge found that Randy was a threat to *himself*, not to others. Two shoplifting incidents comprised the only "threat [Randy posed] to property of the citizens of [the] community." Arguably, Randy's current and previous offenses were not so serious as to justify commitment to training school. However, since no community-based alternatives, short of probation, were first attempted, or for that matter, even considered, we hold that imposing the harshest alternative, commitment to training school, was inappropriate in the circumstances.

### IV

In summary, we hold that it was error to commit Randy Groves to training school without first examining the appropriateness of community-based dispositional alternatives. We conclude that the judge's finding that alternatives to commitment had been attempted unsuccessfully or were inappropriate was not supported by the evidence. Accordingly, we vacate the commitment order and remand the cause for a new dispositional hearing.

On remand, the judge should carefully assess Randy's needs. The judge should also instruct the court counselor to inform him of alternative programs that might meet these needs. We offer some examples of dispositional alternatives the court might consider in designing a plan for Randy: admission to a State, charitable, or for-profit residential or out-patient drug treatment program; enrollment in a substance abuse program offered through Area Mental Health Services; placement in a group home, supervised day care, or specialized foster care where the opportunity for drug

use is curtailed and drug treatment can be arranged; or placing custody in the Department of Social Services through which appropriate drug treatment will be secured.

Vacated and remanded.

Judges EAGLES and GREENE concur.