IN RE MOSSER

[99 N.C. App. 523 (1990)]

---

IN THE MATTER OF: JOHNATHAN MURRY MOSSER

No. 8913DC1248

(Filed 17 July 1990)

**Infants § 20 (NCI3d)— juvenile delinquent—dispositional alternatives —unsuccessful or inappropriate—insufficiency of evidence to support findings—needs of juvenile—insufficient inquiry**

Evidence was insufficient to support the trial court's findings of fact that alternatives to commitment were unsuccessfully attempted or inappropriate, and the trial court therefore erred in committing juvenile appellant to confinement for thirty days with the Division of Youth Services, where commitment to the Division of Youth Services would require that the juvenile drop out of his summer school program and repeat his grade, that the juvenile cease treatment for his alcoholism by the Columbus County Mental Health Clinic, and that the juvenile not participate in a community service program at the local police department; furthermore, the record did not reveal a genuine inquiry into the nature of the needs of the juvenile where the court found as a fact that the juvenile was "manic-depressive," but this finding was not supported by any medical evidence, only by a statement made to the trial court by the mother of the juvenile.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 32, 55.**

APPEAL by juvenile from order entered 21 June 1989 by *Judge David G. Wall* in COLUMBUS County District Court. Heard in the Court of Appeals 6 June 1990.

**IN RE MOSSER**

[99 N.C. App. 523 (1990)]

*Lacy H. Thornburg, Attorney General, by Debra K. Gilchrist, Assistant Attorney General, for the State.*

*Fred C. Meekins, Jr. for juvenile-appellant.*

GREENE, Judge.

Johnathan Mosser (juvenile) appeals the trial judge's disposition and order committing juvenile to confinement for thirty days with the Division of Youth Services.

The record reveals that in May, 1989, juvenile was a thirteen-year-old male who resided at the Lake Waccamaw Boys and Girls Home of North Carolina ("Home"). A juvenile petition dated 30 May 1989 alleged that the juvenile, along with two other juveniles, did "unlawfully and willfully . . . ass[au]lt and strike Johnathan Lamont Garner by slapping in the face with his hands, hitting him with a belt on his back and buttocks, forcing him to drink water with cigarette tobacco in it and shoving his head into a commode filled with urine." The juvenile admitted to striking Johnathan Lamont Garner with his hand and a belt and did not deny that he took part in the other actions. Based on the juvenile's admissions, the trial court adjudicated him a delinquent juvenile on 21 June 1989.

At the dispositional hearing, the following evidence was presented to the trial court: the juvenile was placed on probation in Wake County on 8 August 1988 for a period of nine months for breaking and entering, to be terminated in May 1989; the juvenile was voluntarily admitted by his mother to the Home in August 1988, and that other than the assault on Garner, juvenile had committed no substantial rule violations; the juvenile had been diagnosed as "manic-depressive" and was being treated with the drug lithium; juvenile was an admitted adolescent alcoholic, had been "doing drugs and alcohol for some length of time" and was being treated by the Columbus County Mental Health Clinic and was attending Alcoholic Anonymous meetings. The juvenile intake counselor opined that the juvenile could benefit from remaining at Boys Home and being placed on supervised probation. The substance abuse counselor at the Columbus County Mental Health Clinic, who had a bachelor's degree in social work, expressed the opinion that "it would be more beneficial [for the juvenile to be placed on] probation and continue him on with the meetings and the therapy [offered by the mental health clinic]." The juvenile's

mother indicated that her son had improved since being placed in the home and that she "would like to see him stay at least another year." The juvenile court counselor informed the court that the local police department had informed her that they "would be willing to use [the juvenile] . . . at the Police Department . . . like in a community service program to give [him] a chance to spend some time [with officers at the police department.]" The social worker for the Home recommended to the court that the juvenile be placed on probation and that as a condition of probation that the juvenile remain at the Home for another period of time.

The trial court ordered that the juvenile be committed to the Division of Youth Services for a period of. thirty days and included in its order the following pertinent findings of fact and conclusions of law:

After considering the evidence, the Court finds:

The Court adopts and incorporates herein the Findings of Fact as set out in the Juvenile Adjudication Order.

1. That the Juvenile, JOHNATHAN MURRY MOSSER, has been diagnosed as manic depressive and is currently being treated by the resident Psychiatrist at the Columbus County Mental Health Center, and is taking the drug Lithiu[m], to treat illness.

2. That the Juvenile is presently being counseled by ROBERT HORST of the Columbus County Mental Health Center.

3. That the Juvenile participated with two other Juveniles, to-wit: SANDY LEE COLEMAN and ERIC JACKSON RANDALL in additional acts of violence against JOHNATHAN LAMONT GARNER, by acting in concert and aiding and abetting SANDY COLEMAN in forcing LAMONT GARNER to drink water which contained cigarette tobacco and shoving his head into a commode filled with urine.

4. That the assault and other acts took place while all of the Juveniles, including the victim, were residents of the Boys & Girls Home of North Carolina, and said incidents took place during the night time and early morning hours over a three hour period in the bathroom of one of the cottages located at the Boys Home. The Court further finds that at the time of the incident, the Juveniles were not properly supervised.

5. Due to the nature of the allegations involved and other findings set forth herein, the Court finds as a fact that . . . community based resources as alternative dispositions are inappropriate for the Juvenile.

6. That the Court finds that the best interest of the Juvenile would be served if he were committed to the Department of Human Resources, Division of Youth Services, for a period of thirty days.

The Court further finds that the juvenile meets each of the following criteri[um] for commitment to the Division of Youth Services, Department of Human Resources, specifically that:

(1) The juvenile is delinquent and is ten years of age or older;

(2) The juvenile has not or would not adjust in his own home on probation or while other services are being provided;

(3) Community residential care has already been utilized or would not be successful or is not available;

(4) The juvenile's behavior constitutes some threat to persons or property in the community;

(5) The alternatives to commitment as contained in G.S. 7A-649 have been attempted unsuccessfully or are inappropriate.

The Court concludes as a Matter of Law:

1. That it would be in the best interest of the Juvenile, JOHNATHAN MURRY MOSSER, that he be committed to the Department of Human Resources, Division of Youth Services, for a period of thirty (30) days, to be served in a local confinement facility.

2. That during the period of his confinement, the Juvenile shall be given access to Mr. Robert Horst of the Columbus County Mental Health Center for counseling sessions.

After the dispositional order was entered, the juvenile's attorney informed the court that commitment of the juvenile to the Division of Youth Services would make it impossible for the juvenile to continue counseling by the Columbus County Mental Health Clinic, since the child would be committed to an institution approximately 300 miles from Columbus County. The juvenile's attorney

also notified the court that the juvenile was scheduled to begin summer school and that commitment to the Division of Youth Services would prevent completion of his summer school requirements, thus requiring the juvenile to repeat his grade. The court denied the juvenile's motion to modify the commitment order.

---

The issue is whether record evidence supports the trial court's findings of fact that alternatives to commitment were unsuccessfully attempted or inappropriate.

To support a juvenile's commitment to the Division of Youth Services, the trial judge must make a determination that:

the alternatives to commitment as contained in G.S. 7A-649 have been attempted unsuccessfully or are inappropriate and that the juvenile's behavior constitutes a threat to persons or property in the community.

N.C.G.S. § 7A-652(a) (Cum. Supp. 1989).

The *statutory* alternatives to commitment to the Division of Youth Services, which must be considered by the trial court, include those in N.C.G.S. § 7A-649 (Cum. Supp. 1989) (a suspended imposition of a more severe disposition, restitution, fine, supervised community service, a supervised day program, a community-based program of academic or vocational education, a professional residential or nonresidential treatment program, intermittent confinement in a detention facility, supervised probation, forfeiture of privileges to operate a motor vehicle); in N.C.G.S. § 7A-647(2)(c) (Cum. Supp. 1989) (placement of the juvenile in the custody of the Department of Social Services which may be required to provide "psychiatric, psychological, educational, or other remedial evaluations or treatment for the juvenile"); in N.C.G.S. § 7A-647(3) (Cum. Supp. 1989) (when the trial judge believes or finds evidence that the juvenile is mentally ill or mentally retarded "the judge shall refer him to the area mental health, mental retardation, and substance abuse director," who shall be "responsible for arranging an interdisciplinary evaluation of the juvenile and mobilizing resources to meet his needs"); and in N.C.G.S. § 7A-648(1) (Cum. Supp. 1989) (allows the family to meet the needs of the juvenile "through placement in a private or specialized school or agency").

Additionally, prior to committing a juvenile to the Division of Youth Services, the court must consider any reasonable and

available *nonstatutory* community-level alternatives. *See In re Bullabough*, 89 N.C. App. 171, 365 S.E.2d 642 (1988) (the trial court must consider "community-level resources" not included in N.C.G.S. § 7A-649) (citations omitted); *In re Brownlee*, 301 N.C. 532, 272 S.E.2d 861 (1981) (commitment to training school is an option reserved only "when there is no reasonable [community-level] alternative open to the court . . ."); *In re Groves*, 93 N.C. App. 34, 376 S.E.2d 481 (1989); N.C.G.S. § 7A-646 (Cum. Supp. 1989) ("a juvenile should not be committed to training school . . . if he can be helped through community-level resources").

The needs of the juvenile, which must first be determined by the trial court prior to any disposition, must govern the trial court's selection of appropriate community-level resources. *Bullabough*, at 185, 365 S.E.2d at 650.

Here, the trial court made the necessary findings of fact, but for two distinct reasons, our review of the record does not disclose evidence to support the findings. *See In re Khork*, 71 N.C. App. 151, 321 S.E.2d 487 (1984) (the court's findings must be supported by evidence in the record).

First, there is no evidence to support the trial court's findings that community-based resources were inappropriate for the juvenile or that it was in the best interest of the juvenile to be committed to the Division of Youth Services. To the contrary, all the evidence supports conclusions that it was not in the best interest of the juvenile to be committed to the Division of Youth Services and that the community-based resources considered by the trial court were appropriate for the juvenile.

Second, the record does not reflect a genuine inquiry into the nature of the needs of the juvenile, as required by our *Bullabough* decision. The court found as a fact that the juvenile was "manic-depressive." This finding was supported only by a statement made to the trial court by the mother of the juvenile. This evidence of mental illness compels further inquiry by the trial court prior to entry of any final disposition. While the trial court had the authority to order a psychiatric examination of the juvenile and gain the advice of a medical specialist, he failed to utilize this community resource and such failure precludes commitment to the Division of Youth Services. *See* N.C.G.S. § 7A-647(3); *In re Groves*, at 39, 376 S.E.2d at 484 (trial court has "an affirmative obligation to inquire into and to seriously consider the merits of alternative

dispositions"). As we noted in the *Groves* decision, "it may not be necessary to seek medical or psychiatric input in every juvenile case . . ." *Id.*, at 40, 376 S.E.2d at 485. However, this case presents another compelling example of when such inquiry is required.

Accordingly, the commitment of the juvenile to the Division of Youth Services is vacated and the matter is remanded for a dispositional order.

Vacated and remanded.

Chief Judge HEDRICK and Judge ARNOLD concur.